## SUPREME COURT.

### STOLL agt. KING.

An *agent* employed to collect moneys for his principal, is liable to arrest, where he appropriates such moneys to his own use.

In such a case the agent assumes a special trust and acts in a *"fiduciary capacity,"* and comes within *section* 179 *sub.* 2, of the Code.

*Albany Special Term, February,* 1853. *Motion to vacate order of arrest.* The action is brought to recover moneys alleged to have been collected by the defendant, as the agent of the plaintiff. The affidavit upon which the order was founded,

states, that sundry persons therein named, were indebted to the plaintiff for goods, wares, and merchandize, sold to them by the plaintiff, and that he entrusted and confided the accounts against such persons to the defendant, to collect and pay over to him upon demand—that the defendant accepted the trust, and received the sums specified, during the year 1852—that the plaintiff had frequently applied to the defendant for the moneys so collected, and the defendant had refused to pay the same.

J. H. REYNOLDS, *for Plaintiff.*

J. HARDENBURGH, *for Defendant.*

HARRIS, Justice.—The decision of this question must depend upon the construction to be given to the words "fiduciary capacity" in the second sub-division of the 179th section of the Code. The provision, in which this language is found, authorizes the arrest of a factor, agent, broker, or other person, when the action is for money received, &c., *in a fiduciary capacity*. The term "fiduciary," as I understand it, involves the idea of trust, confidence. It refers to the integrity—the fidelity of the party trusted, rather than his credit or ability. It contemplates good faith, rather than legal obligation, as the basis of the transaction. When an agent or attorney is employed to collect money he acts under a special trust. The money he receives is not his own. He holds it on a special trust, to pay it over to his principal. Money received under such circumstances, is received "in a fiduciary capacity." The principal has confided in *the man*, rather than his *ability to pay*. If he abuses that confidence the law withholds from him the privileges it confers on other debtors, and declares that he shall be liable to arrest. See White agt. Platt, (5 *Denio* 269;) Kingsland agt. Spalding, (3 *Barb. Ch.* 341;) Burhans agt. Casey, (4 *Sand. S. C. R.* 707.)

In the bankrupt act of 1841, these words are employed in a more technical sense. This is evident from the connection in which they are found—at least so it has been supposed. Debts created in consequence of a defalcation as a public officer, **or**

as an executor or administrator or trustee, or while acting in any other fiduciary capacity, were excepted from the operation of the act. "The cases enumerated," says Justice McLean, in Chapman agt. Forsyth, (2 *Howard U. S. R.* 202,) "are not cases of implied but special trusts, and the 'other fiduciary capacity' mentioned must mean the same class of trusts. The act speaks of technical trusts, and not those which the law implies from the contract." In that case, it was held, that a factor who owed his principal money received on the sale of his goods, was not a fiduciary debtor, within the meaning of the act.

Adopting the same rule of construction in this case, *reddendo singula singulis*, and it follows, that factors, agents, brokers, and other persons acting under like trusts, are liable to arrest for money received in their fiduciary character. I do not mean to say that such persons are, in all cases, liable to arrest for a debt created in the capacity in which they act. In the very case before the court, in Chapman agt. Forsyth, above cited, the defendant probably would not have been liable to arrest under the provision of the Code in question. He was a factor. He had received the plaintiff's cotton as such factor, and had sold it. Having received the proceeds, he became indebted therefor to his principal, but it was no part of his trust that the identical proceeds of the sale should be held for the principal. On the other hand, in this case, the defendant having been employed by the plaintiff to collect money for him, received the money so collected, not on his own account, but for his principal. He had no right, as in the case of the factor, to use it as his own, but was bound to set apart the specific money collected, and pay it over upon demand. His failure to do this, was a breach of the special trust reposed in him, and brought him within the provisions of the section of the Code under consideration. See White agt. Platt, above cited. I think the criterion in every such case, is, to determine whether the specific moneys received ought, in good faith, to have been kept and paid over to the employer; or whether the defendant, upon receiving such moneys, had the right to use them as his

own, holding himself accountable to his principal for the debt thus created. In the latter case he would not be liable to arrest,—in the former he would. Here it was sufficiently shown that the defendant had made the collections, under circumstances which required him sacredly to keep the money he received and deliver it to the plaintiff. The order of arrest was therefore properly granted, and the motion must be denied with costs.