By the Court. Duer, J.
The objection that the republic of Mexico has not a “ locus standi in judicio,” or, in the words of the Code, “ a legal capacity to sue,” is very far from commanding .our assent. That a foreign monarch, or a foreign corporation, may maintain an action in the courts of this state—the monarch, in his name of soereignty, the corporation in its corporate name—is not denied; but the monarch, we are told, is a natural, the corporation an artificial, person, and that it is from this personality that the legal capacity of each to sue is derived. A republic, however, it is contended, possesses no such attribute. It is neither a natural, nor an artificial person. It is a mere abstraction, an appellation, and nothing more, not representing or denoting any person or body upon whom process may be served, or for, or against, whom a judgment may be rendered. And we were referred to the case of the Republic of Colombia v. Rothschild, (1 Simons 106,) as a conclusive authority, as in that case a demurrer to the bill, it is said, was sustained by the vice-chancellor, upon the exact grounds that have been stated.
We have been unable to yield our conviction to the argument, or to the authority cited in its support.
The argument rests entirely upon an assumption, which, it appears to us, is certainly groundless; the assumption that personality cannot be truly predicated of a republic. A republic, acknowledged as such by our own government, is an independent sovereign power; in other words, a state, just as certainly, and in the same sense, as a monarchy, limited or absolute; and every state *637 is a person, an artificial person, in a more extensive and far higher sense than an' ordinary corporation. A state, whatever may be the form of its internal government, and by whatever appellation it may be known, is, in the language of Mattel, “a moral person, having an understanding and a will, capable of possessing and acquiring rights, and of contracting and fulfilling obligations.” (Vattel, Droit des Gens. liv. 1, c. 1, § 4; vide, also, Wheaton’s Elem. of Interna. Law, vol. 1, c. 2, §§ 1 & 2.)
The definition given by other writers on the law of nations, is substantially the same, and, indeed, it is upon the truth of this definition that the whole science of international law is founded— since it is evident, that it is only upon persons, having an understanding and a will, that law can operate. Every valid law implies the duty of obedience, and it is only by persons that obedience can be rendered.
As a republic, therefore, as a state, possesses rights which the law has defined, and which, consequently, the law may enforce, its competency to assert its rights in the tribunals of every country in which their assertion may be necessary, it seems to us, is a necessary consequence. If the monéys which are claimed in this action, in reality belong to the state of Mexico, we can see no reason to doubt that it has exactly the same right, as an individual creditor, to demand the aid of the court to compel their payment; nor can we doubt, that it has exactly the same right, as a foreign private corporation, to prosecute an action for that purpose by its appropriate name; the name by which its being and character as a state are designated and known. Ho reason has been, nor as we believe, can be assigned, why the intervention of a natural person, within the jurisdiction of the court, and subject to its process, as the nominal plaintiff in the suit, should be required, in the one case, more than in the other.
Hor shall we limit ourselves to this modified expression of our views. We are satisfied, that to deny to any foreign state, whose independence and sovereignty as such are acknowledged by our own government, and with whom we are at peace, the right to prosecute its just claims in a court of justice, when it is only by the aid that the court is required to give, that its claims can be enforced, would be something more than a breach of national comity, and even something more than a violation, if not of the *638 terms, of the spirit of our federal constitution. As an arbitrary-denial of justice, it would furnish a very grave subject of remonstrance and complaint, and, in the opinion of Lord Redesdale, might even be deemed a just cause of war. .
We. have examined, with attention, the case of The Republic of Colombia v. Rothschild, upon which the learned counsel for the defendant so strongly relied, and are convinced that the judgment of the court did not at all proceed upon the distinction between a suit by-a'monarch, and a suit by a republic, upon which the counsel insisted. It was not. because the plaintiff was a republic that the' demurrer was allowed, but the doctrine upon which the Vice-Chancellor placed his decision was far broader than that which the counsel asserted, or would have ventured to maintain. To prove this the exact words of the Judge shall be quoted. They are, that “a foreign state must sue in the name of some public officers who are entitled to represent the interests of the state, and upon whom process can be served on the part of the defendant, and who can be called upon to answer the cross-bill of the defendant,” language amounting to a plain denial of the right of any foreign state to sue in its own name, but requiring that, in all cases, the action shall be brought by and in -the name of some person acting on .the behalf and under the authority of the state, and who - is within the jurisdiction of the court, since it is only upon- such a person that its process can be effectually served, and who can be made to answer a cross-bill. The reasons, therefore, which the Vice-Chancellor—a judge far more remarkable for the rapidity than the accuracy of his decisions*—assigned for his doctrine, it seems apparent, are just as applicable to a suit by a foreign king, and even by a foreign corporation, as to a suit by a republic, and, if admitted to be valid, would prove that, in all these cases, the nominal plaintiff must be a natural person, within the jurisdiction of the court. •
We deem it needless to cite authorities to show that no such doctrine as this now prevails, or has ever prevailed, in any court of law or equity in England. The Republic of Colombia v. Rothschild is the single case in which it has ever been advanced. We cannot, there *639 fore, agree with our learned brother, from whose order this appeal is taken, that the rule laid down in that case has received the sanction of Lord Eldon, Lord Redesdale, and Lord Brougham.* On the contrary, we are of opinion, that by the decision of the House of Lords in the case of The King of Spain v. Huttill, (1 Dow. & Clark, 164,) it was meant to be and is distinctly repudiated and overruled. The defendant in that case demurred to the bill which was brought by the King of Spain, not as a natural person, but in his political capacity. The Lord Chancellor, Lyndhurst, overruled the demurrer, and the appeal to the House of Lords was from his decision. It appears from the report that the first ground for demurrer that was assigned, and that which was mainly relied on, was this: “ That a foreign sovereign ought not to be allowed to sue in a Court of Equity, inasmuch as by no possibility could process be issued with effect, or equity be done, or a decree be enforced against him.” It seems to me, that this is an exact repetition of the doctrine of the Vice-Chancellor in The Republic of Colombia v. Rothschild, and, consequently, if this doctrine had been followed, the decision of the Chancellor would have been reversed, and the bill have been dismissed. The doctrine, however, instead of being followed, was expressly disclaimed. The decision of the Chancellor, by the unanimous judgment of the law Lords, was very promptly affirmed, and, in delivering his opinion, Lord Redesdale said: “ I have no doubt that a foreign sovereign may sue; otherwise there would be a right without a remedy. He sues here on behalf of his subjects, and if foreign sovereigns were not allowed to do that, the refusal might be a cause of war.” We hold, without hesitation, that this language is just as applicable to the case before us, as to that in which it was uttered. A republic is as truly a sovereign power as a king, and as the king sues by his name of sovereignty on behalf of his subjects, so the republic sues by its name of sovereignty on behalf of its citizens. The right to sue is as clear; the refusal to permit a suit would be as indefensible, in the last case, as in the first.
The first objection to the order appealed from is, therefore, overruled. The second ground upon which it is insisted that the order of arrest ought to be vacated is, that the undertaking not being *640 executed by the plaintiff, is not in the form that the Code requires; and the cáse of Richardson v. Craig, (1 Duer, 666,) was referred to as showing the necessity of such an execution. It was undoubtedly held in that ease, that an undertaking signed by sureties alone was not valid under section 182 of the Code. It must be so executed as to be binding on the plaintiff; but we have not said that an undertaking, binding on the plaintiff, may not be executed by a person having full authority to act on his behalf. Here it is proved that the minister of the republic, M. Almonte, has been expressly instructed by his government to prosecute the present action, and we think that the authority thus given to him carries with it an authority to take any legal proceeding in the progress of the suit, in the name and on behalf of the plaintiff) which, in his judgment, may be necessary to its successful prosecution.
It was justly observed by the counsel for the plaintiff that an undertaking by a foreign government can only be binding on its good faith; and we are satisfied that the good faith of the republic of Mexico is as fully pledged by the undertaking signed and acknowledged by its accredited minister, in his official name, as it would be by any form of obligation that could be adopted. To, hold the undertaking to be void, would be in effect to say that in an action, where a foreign state is the plaintiff, no order for the arrest of the defendant can be made, because no undertaking can be given creating an obligation on the plaintiff, that may be enforced by law. This we will not say, and must, therefore, hold the undertaking to be sufficient.
The next objection to the validity of the order is, that it is not stated in the affidavit upon which it was founded, that the defendant has ■“ embezzled or fraudulently misapplied” the moneys which he received as agent of the plaintiff, and which are now sought to be recovered. The reply to the objection is, that according to the construction which this court has uniformly given to the 2d subdivision in section 179 of the Code, no such statement was necessary to be made. We have uniformly held, and, until overruled by a higher authority, must continue to hold, that to render an agent liable to arrest, all that is necessary to be shown is, that he received the moneys of his principal, for the recovery of which the action is brought, in “a fiduciary capacity,” and that he must be deemed to have received them in. that capacity *641 when it appears that he had no authority to disburse them on account of his principal, but was bound to pay them over on request. All these facts are very clearly stated in the affidavit upon which the order was granted, and, in our opinion, the effect of the statement is not at all weakened or altered by the admission, that the defendant claims that he is entitled to retain the whole sum now in his hands as a compensation, in the nature of a commission, for his services. Whether this claim be valid or not, it is not the less certain that the whole sum when he received it, belonged to the plaintiff, and that its payment over to the plaintiff, according to the statement in the affidavit, might have been instantly demanded. The objection to the sufficiency of the affidavit is, therefore, untenable.
Lastly. It has been earnestly contended, that the defendant is entitled to be wholly discharged upon the facts set forth in the affidavits that have been read on his behalf. It is not denied, that the facts which are relied on as showing that the defendant has a just title to the whole sum which he retains, and consequently, that the plaintiff is not entitled to maintain the action, are distinctly controverted in the counter affidavits on the part of the plaintiff. Nor is it pretended, that the title of the defendant to the commissions which he claims is, upon all the evidence before us, so conclusively established, as to justify us in anticipating the decision of a jury, by declaring that the plaintiff cannot be entitled to recover. All that is asserted is, that, taking into consideration the affidavits on both sides, they raise a fair question for the determination of a jury, and a question which a jury alone is competent to determine; and the argument for the defendants, therefore, so far as the merits are concerned, rests entirely on the assertion, that whenever the affidavits produced render it doubtful whether the plaintiff can recover in the action, a defendant who has been arrested is entitled to his discharge.
The argument entirely overlooks an important distinction, and is founded, we think, upon an erroneous construction of the provisions of the Code, and of the rules that ought to govern us in carrying its provisions into effect.
It is undoubtedly true, that when an order of arrest is founded upon extrinsic facts, wholly unconnected with the right of the plaintiff to maintain the action, as that the debt sought to be re *642 covered was fraudulently contracted, the burden of proof rests upon the plaintiff, and consequently, if the affidavits on the part of the defendant, when a motion is made to vacate the order, deny positively the imputed fraud, and the question whether any was committed, or intended, upon the whole evidence, remains in doubt, the defendant will be entitled to his discharge. It will be the duty of the court to determine the question precisely as it ought to be determined were it submitted to a jury.
But when the facts relied on, in support of a motion to vacate the order, constitute a defence to the action, that if admitted or proved, would bar a recovery, it is the defendant, who, in relation to these facts, holds the affirmative, and it is upon him, therefore, that the burden of proof is necessarily cast; and hence, if he fail to satisfy the court that the defence relied on will certainly be established on the trial, it seems to us clear, that the application for his discharge ought to be denied. The court has no right to say, upon doubtful evidence, that the plaintiff cannot recover in the action, when it is solely upon the truth of this proposition, that the application for the discharge of the defendant is founded.
The application of these" remarks to the case before us is ob vious and decisive. We hold that the proof is conclusive, that the money, which the plaintiff seeks to recover, was received by the defendant in a fiduciary capacity; nor can it be said, that the facts upon which we rest this opinion, are denied by the defendant. He was, therefore, liable to be arrested, and cannot be discharged from the arrest unless he has shown, to our entire conviction, that he has a valid defence to the action; and it is certain that he has no such defence, unless he has proved that he has a just and legal title to the sum which he retains, as a commission, for receiving and paying over the residue of the large fund that, was placed in his hands. His claim for a commission, however, is certainly groundless, if, when he received the fund he was a salaried officer of the government of Mexico, and was prohibited, by a law of the republic then in force, from receiving any compensation for any services he might be directed to perform, beyond the amount of his salary; and it is exactly in relation to these facts, that the evidence before-us is, in no ordinary degree, conflicting and doubtful.. It is impossible for us-to- say, upon the evidence before us, that the republic of Mexico- is not entitled to recover the whole *643 sum for which judgment is demanded, and it is only the clearest proof that it is not entitled to recover any portion of that sum, that could justify us in discharging the defendant. We are convinced, that we ought not, upon affidavits alone, to pass upon the merits of a controversy, that it will be the province of a jury to ' determine, unless the proof that is furnished is not merely sufficient, but conclusive; and it is not pretended that such is the character of the proof that the defendant has given.
The order of Mr. Justice Hoffman, so far as the appeal of the defendant claims its reversal, must, therefore, be affirmed.
We have also concluded, although with much hesitation and doubt, to affirm that part of the order from which the plaintiff has appealed, but in doing so, we are not to be understood as assenting to the views by which Mr. Justice Hoffman, in reducing the amount of the bail that was originally required, appears to have been governed. Whether the defendant is entitled to the whole, or any part, of the commissions which he claims, is a question upon which we do not mean to express or intimate an opinion.
Order affirmed, no costs to either party.

 Sir John Leach.—The distinction between Lord Eldon and Sir John Leach was said to be that it was the custom of the first, “ oyer sans terminer ” and of the second, “ terminer sans oyer.”—(Lord Campbell's Life of Lord Eldon.)

 Vide Republic of Mexico v. Arangoiz. (11 How. Pr. Rep. p. 1.)