GAVIN J. MOFFATT, Respondent, v. ROBERT FULTON, Appellant, Impleaded, etc.

*Execution against the defendant's body for the recovery of money in a fiduciary capacity — the fact that the money was so received must be alleged in the complaint.*

In an action for the recovery of money, in order to justify the taking of the defendant's body in execution, on the ground that he received the money in a fiduciary capacity, the fact that he so received it must be specifically alleged in the complaint.

*Hillis* v. *Bleekert* (53 Hun, 499) and *Bartlett* v. *Sutorius* (25 N. Y. St. Rep., 629), followed.

Discussion as to the allegations of the complaint which will authorize the issuing of such an execution.

APPEAL by the defendant Robert Fulton from a judgment in favor of the plaintiff, entered in the office of the clerk of the county of New York on the 13th day of November, 1888.

The action was brought to trial upon a demurrer to the fourth separate defense alleged in the answer by way of counter-claim, and thereafter upon the issues of fact which were tried before the court and a jury. An order was entered sustaining the demurrer and directing that the plaintiff have judgment thereon, with leave to the defendant to amend his answer containing said counter-claim, and, the answer not having been amended in pursuance of said permission, the issues of fact were brought to trial and a verdict was rendered in favor of the plaintiff, and it was adjudged that the plaintiff recover $1,789.07, the amount found by the jury, together with costs, and that the judgment might be enforced only against the joint property of the defendants herein, and the separate property

of the said defendant Robert Fulton, who was served as aforesaid, and against the person of the said defendant Robert Fulton.

This is an action to recover the proceeds of two promissory notes made by the plaintiff and indorsed by the defendants. Both the plaintiff and defendants were in the paper business at the times mentioned in the evidence. The plaintiff was in business in New Haven, Connecticut, and the defendants were partners under the firm name of the Weymouth Paper Mills, having an office in New York city in charge of the defendant Fulton. In November, 1886, the plaintiff made and delivered to the defendants a note to their order for $908.79, dated November 15, 1886, and payable in three months, for a bill of merchandise. When this note was about to become due the plaintiff found it would be inconvenient for him to pay it. He, therefore, made a similar note for the same amount (Exhibit A), gave it to his salesman, Mr. McDowell, to take to the office of the defendants and ask them to indorse it, have the same discounted and send the proceeds to him in New Haven in time to pay the note (Exhibit B) coming due February eighteenth. On February fifteenth McDowell took the note to Mr. Fulton in New York and told him what Mr. Moffatt had instructed him to tell him. Mr. Fulton said that he did not know whether he could have the note discounted or not, as it was for the same amount as the old one, but that if Mr. Moffatt would make a smaller note he could probably have it discounted. McDowell then asked Mr. Fulton whether he should take the note back to Mr. Moffatt, and he told him not to, but to leave it with him that afternoon and he would try and have it discounted; and if he succeeded he would send the proceeds to Mr. Moffatt, and if he did not succeed he would return the note that night and write Mr. Moffatt in regard to it; and Mr. McDowell left the note with him on his promise to return it; either the note or the proceeds were to be sent to the plaintiff that night. The defendant Fulton did not return the note to the plaintiff, but indorsed it and gave it to Charles A. Colby, a note broker, on February sixteenth, to have it discounted. Mr. Colby sold the note on Saturday, February nineteenth, and on Monday, February twenty-first, paid the proceeds to the Weymouth Paper Mills by giving to Mr. Fulton his check. Mr. Moffatt paid the note (Exhibit B) at its maturity, February 18, 1887. On February seventeenth the

plaintiff went to the defendant's office. Mr. Fulton requested Mr. Moffatt to make a new note for a smaller amount, as it could be more easily discounted than the one of February 15, 1887. He said there was some doubt whether he could get that note discounted. At Mr. Fulton's request he made a smaller note for $750.60 and gave it to Fulton, telling him if he could get it discounted to return the note (Exhibit A) and the proceeds of the note (Exhibit C). He told him that he wanted the proceeds to take care of the note (Exhibit B) coming due February eighteenth. The instructions were that the check for the proceeds was to reach Mr. Moffatt on February eighteenth. The notes were not to be used after that time. The note (Exhibit C) was left by the defendants at their bank to be discounted. The bank discounted the note on March 4, 1887, and passed the proceeds to the credit of the defendants. The note was not held by the bank previous to its discount. The proceeds of neither of the notes (Exhibit A or Exhibit C) have been paid over to the plaintiff. Mr. Moffatt paid the two notes (Exhibits A and C) when they became due.

It also appeared on the record that the defendant interposed as a separate answer a counter-claim against the plaintiff arising from the sale and delivery to him by the defendants of goods, wares and merchandise. To this counter-claim the plaintiff demurred on several grounds, among others, that while the cause of action arising out of the facts stated in the complaint was in tort the counter-claim was founded upon contract, and was, therefore, not of the character specified in section 501 of the Code of Civil Procedure. The issues of law created by the demurrer were decided in favor of the plaintiff, with leave to the defendant to amend his answer containing the counter-claim. It also appears that before the cause was opened the defendant's counsel "moved to dismiss the complaint as to defendant Fulton, for the reason that the complaint, as to the first alleged cause of action, does not contain facts sufficient to constitute a cause of action, and, particularly, does not set forth facts constituting an action in tort; also for the separate reason that the complaint, as to the second alleged cause of action, does not set forth facts constituting a cause of action either in tort or upon contract; also for the separate reason that the complaint unites an alleged cause of action proceeding upon the theory of tort, with one pro-

ceeding on the theory of contract." The court denied each motion, and defendant took a separate exception to each denial. And, further, that when the plaintiff's evidence was all in, the following incidents marked the close of the case, the defendants calling no witness:

DEFENDANT'S COUNSEL — I now move to dismiss on both of the alleged causes of action, on the ground that the facts proved do not constitute either a tort— an actionable conversion — nor the fiduciary relation in respect to either cause of action; and on the ground that it appears that the moneys, the proceeds of the notes, were, by agreement, to be put into the bank of the defendants, and their check was to be sent up to Moffatt, and, under those circumstances, the fiduciary relation was not established.

The COURT — The plaintiff sets out the cause of the complaint. Those facts establish sufficient to maintain the cause of action for a conversion, or a cause of action for the receipt of money in a fiduciary capacity. He urges, in his complaint, that he gave those notes to you for discount before a certain time, and that you agreed to have those notes discounted or returned; that you did have them discounted and he has not got the money. (Motion denied. Exception.)

DEFENDANTS' COUNSEL — I now move, on the same grounds, that your honor direct a verdict in favor of the defendant Fulton. (Motion denied. Exception.)

DEFENDANTS' COUNSEL — I rest my case on that.

Verdict directed for plaintiff for $1,789.07. (Defendant duly excepts.)

DEFENDANT'S COUNSEL — Was the verdict directed on the theory of tort or contract?

The COURT — I think the position the plaintiff has taken here is that the money was received in a fiduciary capacity. I think the allegations of the complaint are sufficient to establish that, and that the plaintiff's proof is ample to sustain that.

The following opinion of Judge BRADY, which states the case, is modified, it will be observed, in its conclusion, by that of Judge BARTLETT, in which VAN BRUNT, P. J., concurs, following it.

*R. Robertson,* for the appellant.

*H. W. Taft,* for the respondent.

BRADY, J. :

The provisions of the Code with reference to the plaintiff's remedy for money received or property collected by a factor, agent, broker or other person in a fiduciary capacity are entirely different from those which existed in 1884, at the time when the decision of *Segelken* v. *Mayor* was made (94 N. Y., 473), and the discussion there indulged in as to the provisions of the Code, as it stood in 1877, is not controlling in this action. Besides, it was held in that case that a person acting in a fiduciary capacity was not subject to an action of tort for mere acts of omission as for not paying over money due, but only for acts of misfeasance. Here the gravamen of the action is misfeasance, there it was not.

By the amendment of 1886 the provisions of sections 549 and 550 were materially, if not radically, changed, as may be seen upon an inspection of the different sections. By subdivision 2 of section 549, as thus amended, it was provided that a defendant might be arrested in an action to recover for money received or to recover property or damages for the conversion or misapplication of property, where it is alleged in the complaint that the money was received or the property was embezzled or fraudulently misapplied by a public officer, or by an attorney, solicitor or counsel, or by an officer or agent of a corporation or banking association in the course of his employment, or by a factor, agent, broker or other person in a fiduciary capacity. It is provided, however, in that subdivision, that where such an allegation is made the plaintiff cannot recover unless he proves the same on the trial of the action.

The question really seems to be whether there is an allegation such as is contemplated and required by the section mentioned. There is no such allegation in the precise language required by the section, but the facts alleged are sufficient to show the receipt of the money on the discount of the notes and the improper application of it, and, therefore, its conversion to the use of the defendants.

It is alleged, for example, after stating the facts, with regard to the execution and delivery of the notes, " but contrary to said agreement, and wrongfully, said defendants allowed the said note to remain in the hands of said broker, who, on the 19th day of February, 1887, sold or discounted the same so that it came into the hands of the East River Bank, in the city of New York, an innocent

holder for value, who now holds the same. On the 21st day of February, 1887, said broker paid to said defendants the proceeds of said note, less commission and discount, which were received by them in trust to pay the same to the plaintiff forthwith."

And, again, that the defendants mingled said proceeds of said note with the partnership property and they were used and applied by the defendants in their partnership business ; and that they had utterly failed and neglected to pay the same or any part thereof, by which failure and neglect the plaintiff has been damaged in the sum of $887.60.

These are the allegations in reference to the first note. In regard to the second, which was delivered to the defendants on the 17th of February, 1887, it is alleged that, relying upon the agreement in trust, to indorse and discount or sell the same for cash and forthwith to pay the proceeds to the plaintiff, less the discount and commission as aforesaid, and for no other purpose whatsoever, the plaintiff delivered the note to the defendants ; that the note was discounted by the bank to whom it was given for that purpose and the proceeds thereof, less the discount, were paid to and received by the defendants, who thereupon used and applied the same in their partnership business. The complaint then alleges a demand of said proceeds, the neglect and refusal of the defendants to pay, and claims damages in the amount of the discount.

These allegations undoubtedly brought the case within the provisions of the section mentioned, and authorized the action in reference to both notes. And such was the decision at the Special Term upon the demurrer as we have seen. It may be well to bear in mind that the word property as used in the Code includes both real and personal property.

The defendants were intrusted with the two notes (the proceeds of which they appropriated) for express alternative purposes, either to procure a discount and remit the proceeds at once to the plaintiff or to return the notes. There was no authority, express or implied, to use them for any other purpose or in any other way, and whatever process was employed to accomplish the object could in no way change the obligation imposed. The mere deposit of the sums received upon the discount of the notes in a bank for the purpose of immediate transmission should not be permitted to change the

relative position of the parties or lessen the obligation of the defendants. Such an act would be a mere incident in the mode of transmission and would in no way indicate an intention to extend the credit of the defendants for the sums thus received. Besides that, the discount of both notes was not contemplated, and was, therefore, not authorized by the understanding between the parties, either directly or inferentially. It is quite clear that if the first note was discounted the second was not to be, and *vice versa.* The contention, therefore, that the deposit in the bank changed the relations of the parties cannot be sustained.

It was doubtless, for the reasons assigned here, that when the counter-claim was interposed, resting on contract alone, the court held, upon demurrer, that it could not avail the defendants in this action for the reason that the action was one in tort; and such is the view also of the learned justice presiding in the court below, who said, in answer to a question put to him, whether the verdict was directed upon the theory of tort or contract: " I think the position the plaintiff has taken here is, that the money was received in a fiduciary capacity. I think the allegations of the complaint are sufficient to establish that, and that the plaintiff's proof is ample to sustain that."

The defendants' counsel had insisted that the complaint should be dismissed, upon the ground that the facts proved did not constitute a tort, an action for conversion, nor the existence of the fiduciary relation in respect to either cause of action. The term fiduciary involves the idea of trust and confidence, it refers to the integrity and fidelity of the party trusted rather than to his credit. It contemplates good faith, rather than legal obligation, as the basis of a transaction. (1 Wait's Pr., 619 ; *Stoll* v. *King,* 8 How., 298.) Where a factor receives money to be invested in a specific thing, and the direction is added that he should not appropriate it to any other purpose, the factor acts in a fiduciary capacity and is liable to be arrested for misappropriating the funds. (*Noble* v. *Prescott,* 4 E. D. Smith, 139.) The same rule applies to an agent employed to collect money. (*Schudder* v. *Shiells,* 17 How., 420 ; *Burhans* v. *Casey,* 4 Sandf., 707.)

It may be said that the views expressed are in conflict with *Hillis* v. *Bleckert* (53 Hun, 499), in which it was held that inasmuch

as there was no allegation in the complaint that the money mentioned was received by the defendant in a fiduciary capacity, it was deficient in an essential element, having in view the provisions of section 549 of the Code of Civil Procedure. That case differs from this in that it is an action to recover from an agent moneys received by him and not paid over, and in which the only suggestion of wrong done is contained in the words in reference to the sums received, " but has converted the same to his own use," which was not sufficient to bring the case within the spirit of the section. And in this case, as we have seen, though there is no allegation in the precise language of the section, there is a charge of wrong-doing with regard to the property entrusted to the defendant, which presents, in substance, the element required.

The struggle in this case was evidently to relieve the defendant from personal arrest, and the efforts of the learned counsel were ceaseless and ingenious, but, unfortunately for his client, must be held to have been unavailing.

The judgment must be affirmed.


BARTLETT, J. :

I find it difficult to reconcile the conclusion reached by Mr. Justice BRADY, in this case, with the decisions of the General Term of this department in *Hillis* v. *Bleckert* (53 Hun, 499) and *Bartlett* v. *Sutorius* (25 N. Y. St. Rep., 629). If those cases were correctly decided, it seems to me that the judgment under review on this appeal is erroneous, so far as it assumes to authorize the issue of execution against the person of the defendant.

The proof made out a case of money had and received. The learned trial judge held that the complaint and evidence sufficed to establish the fact that the money was received in a fiduciary capacity. But there is no such express averment in the complaint; and in *Bartlett* v. *Sutorius* (*supra*) we held that in an action to recover money, where it was sought to take the defendant's body in execution on the ground that he had received the money in a fiduciary capacity, the fact that he so received it must be specifically alleged in the complaint.

In view of the decisions to which I have referred, I do not see how that portion of this judgment can be sustained which

provides for the issue of execution against the person of the defendant.

I think the judgment should be modified by striking that provision therefrom, and as thus modified should be affirmed, without costs.

Van Brunt, P. J., concurred.

Judgment modified as directed in opinion (of Bartlett, J.), and as modified affirmed, without costs.