ORMOND G. SMITH et al., Appellants, *v.* JOHN S. OGILVIE,
Respondent.

The firms of S. & S. and O. & Co., in both of which S. was a partner,
entered into a contract by the terms of which O. & Co. agreed to publish
in book form certain stories belonging to S. & S. and to pay a certain
specified royalty on the sales. S. died and plaintiffs who succeeded to
the business of S. & S., settled with O. the survivor of O. & Co. for all
royalties owing by the latter firm, and charged all claims against it. In
an action against O. to set aside the settlement and release on the ground
of fraud, *held*, that there was no fiduciary relation between the parties;
and so, that a refusal of the trial court to hold that the burden of proof
to show absence of fraud rested upon defendant was proper.

(Argued April 15, 1891; decided June 2, 1891.)

APPEAL from judgment of the General Term of the Supreme
court in the first judicial department, entered upon an order
made July 16, 1889, which affirmed a judgment in favor of
defendant entered upon a decision of the court on trial at
Special Term.

This action was brought by the plaintiffs as successors of
the firm of Street & Smith, against the defendant as survivor
of the firm of J. S. Ogilvie & Co., to set aside as fraudulent a
certain settlement made between the plaintiffs and defendant
in reference to royalties agreed to be paid by J. S. Ogilvie &
Co., under an agreement with the predecessors of the plaintiffs.
Prior to, and at the time of the agreement providing for the
payment of royalties, Francis S. Street and Francis S. Smith
formed the copartnership of Street & Smith in publishing a
newspaper known as The New York Weekly.

Street was also a member of the firm of J. S. Ogilvie & Co. The agreement entered into was as follows:

" This agreement made and entered into the 16th day of September, 1880, between Messrs. Street & Smith of New York, parties of the first part, and J. S. Ogilvie & Co., of the same place, parties of the second part, by which the said parties of the first part agree to allow the said J. S. Ogilvie & Co. to publish and sell certain stories, which shall have been mutually agreed upon, in book form.

" In consideration of the privilege of the exclusive publication and sale of said books, the said J. S. Ogilvie & Co., agree to pay Messrs. Street & Smith, a royalty of twenty cents per volume for all copies sold, the retail price of which shall be $1.50, and the same amount in proportion for any books published under this agreement, the said price of which shall be more or less than $1.50, provided that the cost of making the electrotype plates of said books shall be paid by Messrs. Street & Smith, in all other cases the royalties shall be ten per cent on the retail price. The payment of royalties to be made quarterly unless by mutual consent.

" STREET & SMITH,<br>" J. S. OGILVIE & CO."

Street died in April, 1883, the plaintiff Ormond G. Smith succeeding to his interest. And a new firm was organized which continued the business in the old firm name.

Subsequent to July 2, 1883, Street & Smith, demanded of the defendant a statement of the stories published under the agreement, and the royalties due thereunder, and in compliance therewith a statement was rendered, which bore date September 1, 1883.

On the 22d of September, 1883, Street & Smith and the defendant settled their accounts respecting the matters embraced within such statement, the latter paying royalties up to July 1, 1883, the firm of Street & Smith at the same time giving him a receipt in full.

In the fall of 1883 Street & Smith, made a claim of the

defendant for royalties, upon certain stories published in another
series. This claim the defendant disputed, upon the ground
that such publications were not books, and, therefore, not
included in the royalty agreement, and the plaintiffs threatening
to commence an action, it was agreed that the defendant should
pay $1,600, in settlement, which was done; the plaintiffs at
the same time executing a release therefor. No objection was
made by Street & Smith, to the settlement, until the commence-
ment of this action, nearly five years thereafter, and since that
time the defendant has accounted to the firm of Street & Smith,
as then existing, and to their successors, under the royalty agree-
ment semi-annually, and paid royalties shown to be due by such
accounts, the payment being accepted without objection until
the commencement of this suit.

Further facts appear in the opinion.

*Edward C. James* for appellants. A relation of a fiduciary
nature existed between the parties at the time the settlements
were made. (*N. Y. C. Ins. Co.* v. *N. P. Ins. Co.*, 14 N. Y.
85; *Marie* v. *Garrison*, 13 Abb. [N. C.] 229–232; *Green-
wood* v. *Spring*, 54 Barb. 375; *Fulton* v. *Whitney*, 66 N. Y.
548, 557, 558; *C. C. Co.* v. *Sherman*, 30 Barb. 353; *Englis*
v. *Furniss*, 4 E. D. Smith, 587.) By force of the contract
alone the relations of the parties were fiduciary, or *quasi* fidu-
ciary, and the owners of these stories and plates could main-
tain an action against the publishers in equity for a discovery
and accounting of the stories published, the numbers sold, the
prices received and the royalty due thereon. (*Adams' Appeal,*
113 Penn. St. 449; *Marston* v. *Gould*, 69 N. Y. 220; *Marvin*
v. *Brooks*, 94 id. 71; *Ensign* v. *Nelson*, 56 Hun, 215; *Darrah*
v. *Boyce*, 62 Mich. 480; *Hartsorn* v. *Thomas*, 43 N. J. Eq.
419; *Stevens* v. *Benning*, 1 K. & J. 168; 6 DeG., M. & G.
223; *Reade* v. *Bentley*, 4 K. & J. 662; *Warne* v. *Routledge*,
L. R. [18 Eq.] 497; Whart. on Agents, § 19; 2 Pom. Eq.
Juris. §§ 959, 963; Willard's Eq. Juris. 170; Story's Eq.
Juris. §§ 315, 323; Kerr on Fraud, 160, 161; *Brock* v.
*Barnes*, 40 Barb. 521; *Comstock* v. *Comstock*, 57 id. 453;

3 Greenl. on Ev. § 253; *Fisher* v. *Bishop*, 108 N. Y. 25; *Cowee* v. *Cornell*, 75 id. 97.) Considering the relation of the parties in its true light and the undisputed facts, fraud follows as a conclusion of law, and a finding of fact to the contrary cannot estop an appellate court from granting plaintiffs the relief to which they are entitled. (*Getty* v. *Devlin*, 54 N. Y. 403.) It is not necessary that the injured party should have relied solely on the false representation; but it is sufficient if it was one of the inducing causes. (*Morgan* v. *Skiddy*, 62 N. Y. 319, 328; *Hubbard* v. *Briggs*, 31 id. 518; *Strong* v. *Strong*, 102 id. 69, 74, 75; *Mead* v. *Bunn*, 32 id. 275; Pom. Eq. Juris. § 895.) The defense of an accord and satisfaction is affirmative and must be pleaded, and the burden is upon the party alleging to prove it. (*McKyring* v. *Bull*, 16 N. Y. 297; *Sugden* v. *Beasly*, 9 Ill. 71.)

A. W. *Gleason* for respondent. The burden was on plaintiffs to prove fraud. (*Wakeman* v. *Dalley*, 51 N. Y. 27; *Hubbell* v. *Meigs*, 50 id. 480; *Nelson* v. *Luling*, 62 id. 645; *Nichols* v. *Pinner*, 18 id. 295; *Morris* v. *Talcott*, 96 id. 100; *Marsh* v. *Falker*, 40 id. 566; *Lockwood* v. *Thorn*, 11 id. 170; *Harley* v. *E. W. Bank*, 76 id. 618; *Cowie* v. *Cornell*, 75 id. 91; *Sullivan* v. *Warren*, 43 How. Pr. 188; *Sutton* v. *De Camp*, 4 Abb. [N. S.] 483; *Stoll* v. *King*, 8 How. Pr. 298; *Frost* v. *McCurger*, 14 id. 131; *Turner* v. *Thompson*, 2 Abb. Pr. 444; *Goodrich* v. *Dunbar*, 17 Barb. 644; *Stout* v. *Smith*, 98 N. Y. 25.) There was accord and satisfaction. (*Lockwood* v. *Thorn*, 11 N. Y. 170; *Townsley* v. *Dennison*, 45 Barb. 490; *Koch* v. *Bonitz*, 4 Daly, 117; *Harley* v. *E. W. Bank*, 76 N. Y. 618; *Chubbuck* v. *Vernam*, 42 id. 432.) This court will not review the weight of evidence. (*Healy* v. *Clark*, 120 N. Y. 642; *Finch* v. *Parker*, 49 id. 1; *Bergen* v. *Wemple*, 30 id. 319.)

PARKER, J. The trial court found, as a fact, that after the settlement in the fall of 1883, and the execution and delivery of the release by the parties thereto, there remained no unsettled

matters in connection with the publication of the stories mentioned in the complaint. In order to maintain the action, therefore, it became necessary for the plaintiffs to obtain an adjudication that the settlement was fraudulently procured and should, therefore, be set aside.

The trial court, however, upon the whole testimony found, as a fact, that the defendant did not practice any fraud or deceit, or make any false representations in procuring such settlement.

And the conclusion of law that the settlements were valid transactions and binding upon the parties thereto, necessarily followed the finding of fact made.

The General Term having affirmed the findings of the trial court, they are necessarily controlling here. It is asserted, however, that the plaintiffs are entitled to a reversal of the judgment, because of an alleged error, in refusing to hold that the burden of proof was on the defendant, to show affirmatively that in the settlements evidenced by the receipts of September 22 and December 7, 1883, no deception was practiced or undue influence used.

On the trial plaintiffs' counsel, after offering in evidence a transfer by the executors of Francis S. Smith and by Ormond G. Smith, survivor of Francis S. Smith, to Street & Smith (the new firm), of all the right, title and interest which the said Francis S. Smith had in the copartnership of Street & Smith, asked the court to "rule that the burden of proof is now on the defendant." The court denied plaintiffs' request. This question was again presented by the plaintiffs in the form of a request to the court to hold, as a matter of law, that the burden of proof rested upon the defendant to show that the settlements were procured without fraud.

The court refused to so find, and the exceptions taken to such refusals present the only question requiring consideration. It is asserted that, notwithstanding the finding made by the court that the defendant did not practice any fraud or deceit, or make false representations in connection with the accounts as presented, or in the course of the negotiation resulting in a

settlement between the parties, that the result might have been quite otherwise had the defendant been required on the trial to assume the burden of proving, that in the making of the settlements, the entire transaction was fair, open and well understood.

The appellants conceding the general rule that the burden of proving fraud rests on him who asserts it, urge that this case constitutes an exception, because of the relations existing between the plaintiffs and defendant, which bring it within the rule cited in Pomeroy's Equity Jurisprudence (§ 951): "Where an antecedent fiduciary relation exists a court of equity will presume confidence placed and influence exerted; where there is no such fiduciary relation, the confidence and influence must be proved by satisfactory extrinsic evidence."

Following this rule, it has been frequently held in this state that when such relation is shown to exist, it imposes the burden of proof upon the person taking securities or making contracts or procuring settlements inuring to his benefit, to show that the transaction was just and fair and no undue advantage obtained because of such fiduciary relation. (*Mason* v. *Ring*, 2 Abb. Pr. [N. S.] 322; *Brock* v. *Barnes*, 40 Barb. 521; *Fisher* v. *Bishop*, 108 N. Y. 25.) We are thus conducted to the inquiry whether the contract on its face suggests a fiduciary relation, and if not, whether the fact that Street was a member of both firms, in view of the situation presented in other respects requires a determination that such was the relation at the time of the settlement? A general definition of the word fiduciary cannot well be given, which is sufficiently comprehensive to embrace all cases.

Bouvier defines it as follows: "A contract by which we sell a thing to some one, on condition he will sell back to us. This term is derived from the civil law; may be defined in trust, in confidence; fiduciary contract, an agreement by which a person delivers a thing to another on condition he will return it to him." It embraces trust, confidence and refers to the integrity, the fidelity of the party trusted rather than his credit or ability, and contemplates good faith rather than legal obli-

gation. (*Stoll* v. *King*, 8 How. Pr. 298.) It includes all moneys received under one of the express trusts known to the law, such as that of an executor, trustee, etc. (*Smith* v. *Edmonds*, 1 Code R. 86); money received under an understanding that it is to be invested in a specified manner (*Noble* v. *Prescott*, 4 E. D. Smith, 139); moneys received by an agent for his principal which he has no authority to disburse, but is bound to pay over. (*Republic of Mexico* v. *Arangoiz*, 5 Duer, 634.) The test in cases of agency is whether the specific moneys ought to have been kept and paid over or whether the agent had a right to use the money. (*Stoll* v. *King, supra.*) Partners occupy towards each other as to the partnership business a fiduciary relation, and in cases of *quasi* partnership the like relation has been held to exist. (*Marston* v. *Gould*, 69 N. Y. 225.)

Now upon the face of the agreement it appears that Street & Smith and J. S. Ogilvie & Co. agreed that Ogilvie & Co. might have the exclusive right of publication of certain stories belonging to Street & Smith in book form, in consideration of their promise to pay twenty cents per volume for all copies sold, the retail price of which should be $1.50 and a proportionate amount for books retailing at more or less than $1.50 provided Street & Smith paid for making the electrotype plates.

Whether they should pay for the plates being made optional with Street & Smith. In the event that they should not, it was provided that they should receive a royalty of ten per cent on the retail price, payment of royalties to be made quarterly unless mutually agreed otherwise.

It will be observed that the agreement did not provide that a certain portion of the money received from the sale of the books should be paid over to Street & Smith. It fails to suggest in any manner that such moneys or any portion of them were to be deemed the moneys of Street & Smith, which the other party was bound to turn over, having no right to retain the specific moneys received. There was in such respect, therefore, no fiduciary relation. Neither were the parties to

the contract partners in the publication and sale of the books.

Street & Smith furnished stories to be published in book form but exercised no other or further control over their publication and sale. For that they received a specified sum for each book sold, but they did not share in the profits as such nor bear any part of the losses, if any there were. All of the risks of the business rested on J. S. Ogilvie & Co. If the publication of a book resulted in a loss, Street & Smith were, nevertheless, entitled to a fixed sum for each book sold. If it eventuated in a profit they could not share therein, but were entitled only to the sum agreed upon for each volume disposed of.

There is no feature of the agreement, as we think, which establishes the relations of the parties thereto towards each other as fiduciary in character, and it need not be examined further. So far we have considered whether the situation of the parties each to the other as indicated on the face of the agreement was one of trust and confidence, but appellant's counsel on the argument having attached some importance to the fact that Street was a member of both firms, we shall consider briefly whether the situation is altered by reason of it.

It cannot be doubted that Street's and Ogilvie's connection with the firm of J. S. Ogilvie & Co. stamped their relations towards each other in the business of that firm as fiduciary, and in an action brought by Street, as a member thereof, against his partner relating to his conduct in the business of the firm, he would have been entitled to all the benefits derivable by reason thereof. Indeed it appears from the record before us, that Street's executors instituted a suit against the defendant as surviving partner, in which he recovered a large sum of money which was adjudged to be the share and interest which Street had in the firm assets at his death.

In that action, therefore, the rights of the deceased partner were ascertained and secured. His representatives, or successors have no other or further interest in, or claim against the firm of J. S. Ogilvie & Co., except through his membership of the firm

of Street & Smith on account of transactions growing out of the royalty contract, which constitutes the basis of this controversy.

This suit is not brought to set aside that contract. It is not founded on a claim that in bringing about its making, and execution, Street did any thing that he ought not to have done, as a partner of Smith. No misconduct is alleged against him.

On the contrary, the validity and binding force of the contract is recognized, and asserted by the plaintiffs. The acts of which they complain being that, after the death of Street, the defendant by means of misrepresentations, fraudulently procured the settlement, which the plaintiffs seek to set aside. The death of Street put an end to the partnership of both Street & Smith and J. S. Ogilvie & Co., and clearly the dead man's former connection with both firms cannot be said to have caused the survivors in making the settlement, to deal towards each other on the basis of trust and confidence.

There was, therefore, nothing in the relation of the parties at the time of the settlement, which justified them in dealing with each other, otherwise than at arms length, and the burden rested on the plaintiffs, to affirmatively establish that the settlement was fraudulently procured. This they failed to do.

The judgment should be affirmed.

All concur.

Judgment affirmed.