JINDRICH WALDES, HYNEC PUC, SIEGMUND WALDES and EDUARD MERZINGER, Copartners Trading under the Firm Name and Style of WALDES & Co., Plaintiffs, *v.* SIGMUND BASCH, MARTIN T. DANNREUTHER, HERMAN BASCH and SIGMUND BASCH, MARTIN T. DANNREUTHER and HERMAN BASCH, as Trustees of the Creditors and Stockholders of WALDES & Co., INC., a Dissolved Corporation, et al., Defendants.

(Supreme Court, New York Special Term, November, 1919.)

Alien enemies — who are — right of retransfer of right of action by alien property custodian — parties — pleading — when demurrer sustained — Trading with the Enemy Act of October 6, 1917, as amended July 11, 1919.

The provision of the Trading with the Enemy Act of October 6, 1917, as amended July 11, 1919, which authorized the return of property held by the alien property custodian to

citizens of our allies solely by reason of residence in that portion of the territory of any nation associated with the United States in the prosecution of the war which was occupied by military or naval forces of Germany or Austria-Hungary or their allies, if such persons are citizens or subjects of such associated nation, was designed to confer power to retransfer to subjects, citizens or denizens of allies of the United States who were in occupied territory of allied nations during the war.

The privilege thus granted is founded upon the doctrine of *post liminium,* and residents of the German empire have no valid claim to a right of retransfer to them by the alien property custodian of a right of action, and where two such residents are joined as plaintiffs in an action relating to an alleged retransfer, with other joint owners who are actual residents of Prague, in Czecho-Slovakia, and not in the category of alien enemies, a demurrer to the complaint on the ground of misjoinder of parties plaintiff will be sustained.

DEMURRER to complaint.

Strauss, Reich & Boyer (Eugene D. Boyer, of counsel), for plaintiffs.

Duer, Strong & Whitehead (Seldon Bacon, of counsel), for defendant Herman Basch, individually and as trustee, etc.

McAvoy, J. The first question involved is procedural and relates to the point whether or not a demurrer will lie against plaintiffs because they are alien enemies upon the ground that they have no legal capacity to sue, the defendant asserting that the mode of process is to move to stay or arrest the action *pendente bello.* This latter mode is proper when the action is pending at the outbreak of the belligerent condition, because logically the capacity was in the party at the time he brought the suit and at which time he is judged, whereas, if he brings a suit after

disability be declared by the conventional law of nations, or by statute or proclamation, he is obviously by the same ratiocination to be held incapable. The second procedural point is quite simple and propounds this query: " Is a demurrer for misjoinder proper if some parties are alien enemies and some not where the ownership of the *chose* is joint? This must be answered yes. Because if the ownership be joint, as in partnership, the alien enemies are necessary parties; they own the *chose* in the language of the books *per my et per tous;* its character is indivisible, and some may not sue when other joint owners are debarred. This appears demonstrated. Whether a cause of action is stated, assuming that both the grounds of demurrer just discussed be overruled, depends upon the power of the alien property custodian to retransfer the cause of action herein to plaintiff free from any claims of the United States. This power is wholly statutory, and if it exists it must be found within the enumeration of his powers set forth in the creative Trading with the Enemy Act. The first two grounds of demurrer rest upon the same base. If none of the parties plaintiff may be said now to be alien enemies, the pleas in abatement of lack of capacity and misjoinder must fail. If any of the plaintiffs are alien enemies within the statutory definition in the Trading with the Enemy Act, or under the commonly adopted canons of the Law of Nations, the plea in abatement would be sustained. Two plaintiffs are residents of Prague, Bohemia, in the newly erected territory known as Czecho-Slovakia, all of whose territory was formerly a part of the Austro-Hungarian Empire. Two others of the plaintiffs are residents of Dresden, Saxony, in the German Empire, who claim citizenship by birth and allegiance in the Czecho-Slo-

vakian state. The first may be counted as alien enemies by reason of residence and being possibly subject to Austria's government; the second as residents of Germany and likewise possible subjects of Austria. Czecho-Slovakia has been recognized both as a belligerent and an independent state by the executive of this government, and has had a minister appointed to its capital by provision of the congress. It is the rule in this country that recognition either of belligerency and independence is a political act which must be exercised by the political branches of government, the executive and legislative. It is still a disputed question whether it is exclusively executive or whether recognition requires the action of both the executive and legislative branches of the government. The act of congress appropriating moneys for the establishment of a foreign mission to Czecho-Slovakia and the president's proclamation of recognition of that government as a separate and independent state give both of the sanctions which are recognized as necessary political acts for the erection of a new sovereignty, and grants an equality to the new state with the already existing states. The courts of the United States, inclusive of those of the several states, are precluded from inquiring further into the question and must accept the determination of recognition as the conclusion of the proper authority of government; the revolutionists having actually succeeded in separating themselves from their former mother country and in completely overturning the formerly existing government and substituting the new one. 2 Butler, Treaty-Making Power, 357; *Williams* v. *Suffolk Ins. Co.*, 13 Pet. 415; *Gelston* v. *Hoyt*, 1 Johns. Ch. 543. The danger that sovereignty assumed by the revolutionists would revert to the former Austro-Hungarian

Empire either through reconquest during war or through restoration in the articles of the treaty of peace must be deemed to have passed. The rule of *post liminium* which would render possible the divesting of citizenship in the new state of the inhabitants thereof and their return to their former sovereignty cannot therefore be invoked, for the original sovereign has, through its representatives, confirmed the status of that portion of the former national domain as constituting the dominion of the new state. It does not seem to be open to argument that the actual residents of Prague, in Czecho-Slovakia, are not to be placed in the category of alien enemies. The status of the residents of Dresden, within the Empire of Germany, is without doubt, under the Trading with the Enemy Act, that of enemies. Section 2 of that act provides that the term enemy includes "(a) Any individual, partnership or other body of individuals, of any nationality, resident within the territory (including that occupied by the military and naval forces) of any nation * * * with which the United States is at war * * *." By its express terms this language includes those plaintiffs residents of Germany, and their status it not to be distinguished from that of other residents of Germany by the declaration and admission that the war trade board, created by executive proclamation with the legislative sanction of appropriation for its maintenance, has issued licenses permitting trade with Germany and persons resident in Germany. This assumed suspension of the law is effectively answered by the rejoinder that a license to trade does not permit the commencement of actions at law or suits in equity excepting in relation to matters arising out of the business for which the license is granted, or as the language of the act is: " Unless the same arises

solely out of the business transacted within the United States under such license." Trading with the Enemy Act of October 6, 1917, § 7, subd. B. Mere declaration of these residents of Germany of their intention to assume the national character of citizenship of Czecho-Slovakia cannot be accepted as a substitute for actual removal into or *bona fide* evidence of intention to return to that state. It is proper that courts of a belligerent nation should deny to any person the right to use a character so equivocal as to put it in his power to claim either nationality whenever it may best suit his purpose and it is called in question. Bynkershoek, Quaest. Jur. Pub. lib. 1, cap. 10; Grotius, De Jur. Bel. ac. Pac. lib. 3, cap. 2. Until ratification of the treaty of peace, now pending before congress, the state of war continues, and these plaintiffs domiciled in Germany may not sue in the courts for the redress of any grievance, except such as arise out of the transactions of business under license, whereby they are permitted to trade. Under my determination the joinder of these two partners with those capable of suing constitute a misjoinder of parties plaintiff, and the demurrer on that ground must be sustained. The authority upon which the plaintiffs rely for the repossession of this right of action is by virtue of an assignment or retransfer thereof by the alien property custodian of all the rights which the government had therein, under the amendment of the Trading with the Enemy Act of July 11, 1919, which authorized the return of property held by the alien property custodian to citizens of our allies who came within the category of alien enemies solely by reason of residence in that portion of the territory of any nation associated with the United States in the prosecution of the war which was occupied by military or naval forces of Germany or Austria-Hungary or their allies, and if such persons are citizens

or subjects of such associated nation. Obviously, these plaintiffs who were residents of Dresden, Germany, were not within the category of enemy solely by reason of residence in any portion of the territory of any nation associated with the United States in the prosecution of the war. This provision was designed to confer the power to retransfer to subjects, citizens or denizens of allies of the United States, who were in occupied territory of allied nations during the war and thus had the status of enemy through their temporary involuntary subjection. Upon evacuation of the territory by the conquerors, under the doctrine of *post liminium* mentioned above, the status which had obtained before occupancy by the conquering army returned to the inhabitants and the permission to transfer to such inhabitants was a mere declaration of that policy in statute law. Vattel, Droit des Gens, liv. 3, ch. 13, § 197. The privilege granted is founded upon that doctrine, and since these plaintiffs residents of enemy territory do not come within that class, they cannot validly claim a right of retransfer to them by the alien property custodian. Under the provisions of the amendment he has no other power of retransfer and the right asserted by him in the act of retransfer carries nothing with it. The ruling is therefore (1) that the plaintiffs resident in Germany are incapable of suing and were at the commencement of the action alien enemies; (2) that they are therefore misjoined with the parties plaintiff, who are capable, the residents of Czecho-Slovakia; (3) that the cause is not sufficiently stated as the property of any of the plaintiffs by reason of a failure of a due assignment according to law. Motion for an order sustaining demurrer granted, with costs.

Ordered accordingly.