RUSSIAN SOCIALIST FEDERATED SOVIET REPUBLIC, Respondent, *v.* JACQUES ROBERTO CIBRARIO and Others, Appellants.

First Department, December 16, 1921.

Parties — capacity to sue — action by plaintiff as sovereign State — allegation that plaintiff is sovereign State not conclusive upon court — judicial notice of public matters — whether plaintiff is sovereign State must be determined by reference to public acts of executive and legislative departments of government — courts may call upon Department of State for necessary information bearing upon recognition of foreign sovereignties — test of right of foreign sovereignty to sue in courts of State is its recognition by our own government — plaintiff has no capacity to sue in courts of this State.

An allegation that the plaintiff is a sovereign State is not conclusive upon the court, where the truth is otherwise, as proved by public matters of which the court is bound to take judicial notice.

The question of whether the plaintiff is a sovereign State must be determined by the court, not on its own initiative, but by reference to the public acts of the executive and legislative departments of the government, of which the courts are bound to take judicial notice.

Not only are the courts bound to take judicial notice of public matters which bear upon the question of our recognition of foreign governments, but they have the right, where they are in doubt as to the facts, to call upon the Department of State for the necessary information.

The test of the right of a foreign sovereignty to sue in our courts is its recognition by our own government.

Accordingly, while the plaintiff claims to be a *de facto* government, it has no capacity to sue in the courts of this State as it did not show any acts of recognition of its existence by the government of this country, and furthermore the record shows that, so far as this country is concerned, the plaintiff is non-existent as a sovereignty.

APPEAL by the defendants, Jacques Roberto Cibrario and others, from an order of the Supreme Court, made at the New York Special Term and entered in the office of the clerk of

the county of New York on the 14th day of September, 1921, appointing a receiver *pendente lite* and granting an injunction, as resettled by an order entered in said clerk's office on the 26th day of September, 1921.

*Daniel P. Hays* of counsel [*Edwin D. Hays* with him on the brief; *Hays, Hershfield & Wolf*, attorneys], for the appellants.

*Osmond K. Fraenkel* of counsel [*Isaac A. Hourwich* with him on the brief; *Charles Recht*, attorney], for the respondent.

DOWLING, J.:

This action is brought by plaintiff in its alleged capacity of a sovereign State, to compel the defendants to account for moneys which, it is claimed, the defendant Cibrario fraudulently obtained under a contract made by him on July 24, 1918, with the Cinematographic Committee of the Commissariat of Public Instruction, which is alleged to be a subordinate government body of the plaintiff.

There is no dispute as to the making of this contract with the committee. It is in writing, and a translation thereof is annexed to the complaint.

This contract provided for the purchase by the cinematographic committee, of certain moving picture machines, apparatus, film and material, at designated prices mentioned therein, aggregating 16,985,500 rubles, and the committee, in addition to paying the prices therein mentioned for the goods, were to pay the defendant Cibrario six per cent of the total purchase price, as commission, one per cent on the entire sum to be paid him at once as a guaranty of fulfillment by the committee. The sum of $10,000 was in fact paid by the plaintiff to Cibrario as an advance payment on his commissions.

In August, 1918, plaintiff delivered to Dr. Wm. C. Huntington, American commerical attache at Petrograd, the sum of $1,000,000 to be deposited in a reliable banking institution in the United States of America, subject to drafts drawn on the conditions contained in the contract referred to, a copy of which was to be filed with the institution selected. Thereafter Dr. Huntington caused the said sum of $1,000,000 to be deposited with the National City Bank of New York in accordance with the terms of the agreement, a copy of which was deposited with it, and the deposit was accepted subject

to the limitations and terms imposed by the agreement upon the withdrawal of the funds so deposited.

The plaintiff contends that, under the contract, the defendant Cibrario was acting as its purchasing agent and nothing more, and could not lawfully make a profit on the purchase and sale of the goods in question. It claims that the defendant Cibrario bought inferior goods at prices much lower than those mentioned in the contract, and obtained payment for them from the National City Bank, at the contract price, securing the difference for his own use, either by buying the goods in the name of a dummy corporation and having it bill them at the contract price to the committee, or by having the manufacturers bill the goods at the contract price and rebate the difference to Cibrario. In substance plaintiff charges that Cibrario made large secret profits in connection with his purchases, that the materials purchased were not in compliance with the contract, but were in large part worthless, and that the time limitation prescribed by the contract was not observed.

It is also charged that various corporations named as defendants in this action were organized by Cibrario for the purpose of defrauding the plaintiff, and that their sole assets consist of the plaintiff's moneys received by Cibrario in violation of his trust.

A receiver was asked of the effects of the defendant Cibrario, as well as of the various corporations organized and controlled by him, and of all their property, as well as an injunction restraining the transfer of any of their property, in order to preserve whatever might remain of plaintiff's funds pending the trial of this action. From the order appointing such receiver this appeal is taken.

The first objection raised by the defendants is, that the " Russian Socialist Federated Soviet Republic," never having been recognized as a sovereignty by the executive or legislative departments of the United States government, has no capacity to sue in the courts of the United States, or of any of the States.

The complaint herein contains the following allegations: " That the Russian Socialist Federated Soviet Republic, hereinafter referred to as the Russian Soviet Government, is a

sovereign State, having its seat of government at Moscow, Russia; that George Tchicherin is the People's Commissar of Foreign Affairs; that the Cinematographic Committee of the Commissariat of Public Instruction, hereinafter referred to as the Cinematographic Committee, is a subordinate government body thereof."

The allegation that the plaintiff is a sovereign State is not conclusive upon the court, where the truth is otherwise, as proven by public matters of which the court is bound to take judicial notice.

In *Taylor* v. *Barclay* (2 Sim. 213) a bill in equity was based on an agreement which it alleged had been made in 1825 by agents of " the government of the Federal Republic of Central America, which was a sovereign and independent State, recognized and treated as such by His Majesty, the King of these realms." On demurrer, Vice-Chancellor SHADWELL dismissed the bill, saying: " I have had communication with the Foreign Office, and I am authorized to state that the Federal Republic of Central America has not been recognized as an independent government by the government of this country. * * * Inasmuch as I conceive it is the duty of the judge in every court to take notice of public matters which affect the government of this country, I conceive that, notwithstanding there is this averment in the bill, I am bound to take the fact as it really exists, not as it is averred to be. * * * Nothing is taken to be true, except that which is properly pleaded; and I am of opinion that when you plead that which is historically false, and which the Judges are bound to take notice of as being false, it cannot be said that you have properly pleaded, merely because it is averred, in plain terms; and that I must take it just as if there was no averment on the record." (Quoted with approval in *Jones* v. *United States*, 137 U. S. 202, 215.)

In *Oetjen* v. *Central Leather Co.* (246 U. S. 301) the court said: " This court will take judicial notice of the fact that, since the transactions thus detailed and since the trial of this case in the lower courts, the government of the United States recognized the government of Carranza as the *de facto* government of the Republic of Mexico on October 19, 1915, and as the *de jure* government on August 31, 1917."

The question of whether the plaintiff is a sovereign State must be determined by the court, not on its own initiative, but by reference to the public acts of the executive and legislative departments of the government, of which the courts are bound to take judicial notice.

As was said in *Jones* v. *United States (supra)* at page 212: " Who is the sovereign, *de jure* or *de facto,* of a territory is not a judicial, but a political question, the determination of which by the legislative and executive departments of any government conclusively binds the judges, as well as all other officers, citizens and subjects of that government.   This principle has always been upheld by this court, and has been affirmed under a great variety of circumstances." (Citing *Gelston* v. *Hoyt,* 3 Wheat. 246, and other cases.)   " It is equally well settled in England." (Citing *The Pelican,* Edw. Adm. Appx. D, and other cases.)   And again at page 214 the court said: "All courts of justice are bound to take judicial notice of the territorial extent of the jurisdiction exercised by the government whose laws they administer, or of its recognition or denial of the sovereignty of a foreign power, as appearing from the public acts of the legislature and executive, although those acts are not formally put in evidence, nor in accord with the pleadings."   And again the court said (at p. 216): " In the ascertainment of any facts of which they are bound to take judicial notice, as in the decision of matters of law which it is their office to know, the judges may refresh their memory and inform their conscience from such sources as they deem most trustworthy.   *   *   *   As to international affairs, such as the recognition of a foreign government, or of the diplomatic character of a person claiming to be its representative, they may inquire of the Foreign Office or the Department of State." (See, also, *Underhill* v. *Hernandez,* 168 U. S. 250; *Ricaud* v. *American Metal Co.,* 246 id. 304.)

In *Agency of Canadian Car & Foundry Co., Ltd.,* v. *American Can Co.* (258 Fed. Rep. 363) the court said (at p. 368): " On July 5, 1917, the United States government recognized Boris Bakhmetieff as the Russian ambassador.   The record contains a certificate, signed and sealed on May 8, 1918, by Robert Lansing, Secretary of State of the United States of America, stating that Boris Bakhmetieff presented his letter of credence

to the President and was officially received by the President as ambassador extraordinary and plenipotentiary of Russia on July 5, 1917, and that he has since that date been recognized by the Department of State as the ambassador of Russia. * * *

" Who is the sovereign *de jure* or *de facto* of a country is a question for the political departments of the government. It is not a judicial question. The decision of the matter by the political departments is in this country conclusive upon the judges. *Jones* v. *United States*, 137 U. S. 202, 212, 11 Sup. Ct. 80, 34 L. Ed. 691. The same principle is the established law of England. *Republic of Peru* v. *Dreyfus*, 38 Ch. Div. 348, 356, 359. In the same way the question who represents and acts for a foreign government or nation in its relations with the United States is determined, not by the judicial department, but exclusively by the political branch of the government. *In re Baiz*, 135 U. S. 403, 10 Sup. Ct. 854, 34 L. Ed. 222. So that the certificate of the Secretary of State, above referred to, certifying to the official character of Boris Bakhmetieff as the Russian ambassador to the United States is not only evidence, but it is the best evidence of Mr. Bakhmetieff's diplomatic character, and is to be regarded by the courts as conclusive of the question, and the court could not proceed upon argumentative and collateral proof."

Not only are the courts bound to take judicial notice of public matters, as before stated, which bear upon the question of our recognition of foreign sovereignties, but they have the right, where they are in doubt as to the facts, to call upon the Department of State for the necessary information. " In judicial proceedings involving the question of the existence of a particular government, the action of the Department of State ' has been confined to furnishing, upon application of any court, a statement of the actual status of diplomatic relations between the United States and the government in question.' " (Secretary of State John W. Foster to Señor Bolet Peraza, Venezuelan Minister, September 21, 1892. Foreign Relation, 1892, p. 644, quoted in Moore's International Law Digest, vol. 1, p. 247.)

In England, Sir Frederick Pollock declared (Law Quarterly, April, 1921, p. 249), dealing with the problem " What is a Nation? " that " the only strictly legal question is, What is a

sovereign State? and the only legal answer is that, which in case of doubt, the Court obtains from the Foreign Office."

In the recent case of *Aksionairnoye Obschestvo Dlia Mechanicsheskoyi Obrabotky Diereva A. M. Luther* v. *James Sagor & Co.* (L. R. [1921] 1 K. B. 456; revd., 3 id. 532; 7 Lloyd's List Law Rep. 218; editorially considered in the Law Journal of London, May 21, 1921) an appeal had been taken from a judgment of Mr. Justice Roche, by which it was declared that the plaintiffs were unincumbered owners of a quantity of veneer which the appealing defendants had bought from the Soviet government of Russia through M. Krassin and had shipped from Russia to Hull and London. The goods in question had been taken possession of by the Soviet government in 1919 under its decree for the nationalization of all private property, including factories such as that conducted by plaintiffs. The goods in suit had been sold by Krassin, representing the Soviet regime, to defendants in England in 1920. The plaintiffs contended that the so-called government had no existence as such, never having been recognized by the English government, and that the seizure of their goods was pure robbery. As an alternative, they contended that the decree of the so-called government nationalizing all factories, as a result of which their goods were seized, was not a decree which the courts of England would recognize. Mr. Justice Roche decided both points in their favor. In so doing, he acted on letters received from the Foreign Office in November, 1920, which he held showed that His Majesty's government had not recognized the Soviet government as the *de facto* government of Russia.

When the appeal first came on to be heard in the Court of Appeal of England (April 29, 1921), the counsel for appellants stated that he was in receipt of a letter from the Foreign Office for the information of the court (dated April 20) stating that the Soviet government had been recognized as a *de facto* sovereignty by England, whereupon an adjournment was taken. (7 Lloyd's List, 110.) The case again came up for argument on May second, and at its conclusion Lord Justice Bankes announced "that the court would consider their judgment, and that in the meantime, if necessary, they would communicate with the Foreign Office as to any further information they might think it desirable to have." (Id. p. 158.)

The new evidence submitted on the appeal consisted of two letters from the Foreign Office. The first of these, dated April 20, 1921, was written in reply to a request from appellants' solicitors for " a Certificate to the Court of Appeal that the Government of the Russian Socialist Federal Soviet Republic is recognized by H. M. Government as the *de facto* Government of Russia," and stated, on behalf of Earl Curzon of Kedleston: " I am to inform you that H. M. Government recognizes the Soviet Government as the *de facto* Government of Russia." As appears from the opinions, it was the trade agreement made on March 16, 1921, between the government of the United Kingdom and the government of the Russian Socialist Federal Soviet Republic which constituted this recognition, and which had been executed on behalf of the latter party thereto by M. Krassin, who had sold the goods in question to the defendant in the action.

The Court of Appeal held that Mr. Justice ROCHE had correctly decided the case upon the evidence which was before him, but upon the new evidence as to the later recognition of the Soviet government, of which the court was bound to take notice, the judgment must be reversed. This was based on the ground that the official recognition by the English government must be accepted by the courts of that country as settling the status of the Soviet government; and that even if the morality or justice of a decree made by a duly recognized sovereign State could be questioned in the courts of England (which the court did not pass on), the court could not treat the decree in question " otherwise than as the expression by the *de facto* Government of a civilized country of a policy which it considered to be in the best interests of that country."

In view of its determination that the judgment was correct when rendered, the Court of Appeal allowed respondents the costs of the action, and gave to appellant the costs of the appeal only. In this case not only was the rule recognized that official recognition is the sole test of the existence of a foreign government, *de facto* or *de jure*, but, as well, that the fact of such recognition is to be ascertained from the appropriate governmental authority, and that, if at any time such authority advises the court of a change in the status of a foreign government, the court must act on that information.

Whenever the question has been raised in this State, it has been held that the test of the right of a foreign sovereignty to sue in our courts is its recognition by our own government. Thus in *Republic of Mexico* v. *De Arangoiz* (5 Duer, 634) the court held that a republic, recognized as such by our own government, is an independent sovereign power, and, therefore, a State possessing rights which the law defines and may enforce, having the competency to enforce its rights in a court of justice; and that to deny the right to sue in our courts to a foreign State, acknowledged as such by our own government and with whom we are at peace, would be a grave subject of remonstrance and complaint and might even be deemed a just cause of war. In its opinion the court said (at p. 637): " We are satisfied, that to deny any foreign State, whose independence and sovereignty as such are acknowledged by our own government, and with whom we are at peace, the right to prosecute its just claims in a court of justice, when it is only by the aid that the court is required to give, that its claims can be enforced, would be something more than a breach of national comity, and even something more than a violation, if not of the terms, of the spirit of our Federal Constitution. As an arbitrary denial of justice, it would furnish a very grave subject of remonstrance and complaint, and in the opinion of Lord REDESDALE, might even be deemed a just cause of war."

In *Republic of Honduras* v. *Soto* (112 N. Y. 310) the court said (at p. 311): " It is urged by the plaintiff that it is neither a person nor a foreign corporation within the meaning of the Code. It is not disputed but that the plaintiff is an independent government, recognized as such by the United States, and capable of entering into contracts and acquiring property, as well as competent, through the rule of comity, of bringing and maintaining actions in the courts of this country."

In *State of Yucatan* v. *Argumedo* (92 Misc. Rep. 547) the authorities were discussed at length. The court upheld its right to entertain jurisdiction of the action because the authority of the Carranza or Constitutionalist government of Mexico (including the State of Yucatan) as that of a *de facto* government had been recognized by our government, and even though that recognition followed by a few days the institution of the action, the recognition of the Carranza government dated

back to its inception, and all acts of the plaintiff government of Yucatan, such as the bringing of the action, were ratified.

In *Waldes* v. *Basch* (109 Misc. Rep. 306; affd., 191 App. Div. 904), it was said (at p. 309): " It is the rule in this country that recognition either of belligerency and independence is a political act which must be exercised by the political branches of government, the executive and legislative. It is still a disputed question whether it is exclusively executive or whether recognition requires the action of both the executive and legislative branches of the government. The act of Congress appropriating moneys for the establishment of a foreign mission to Czecho-Slovakia and the President's proclamation of recognition of that government as a separate and independent State give both of the sanctions which are recognized as necessary political acts for the erection of a new sovereignty, and grants an equality to the new State with the already existing States. The courts of the United States, inclusive of those of the several States, are precluded from inquiring further into the question and must accept the determination of recognition as the conclusion of the proper authority of government."

In the case at bar, while plaintiff claims to be a *de facto* government, and its title and right to sue alike rest on that claim, it is unable to show any acts of recognition by the government of this country. On the contrary, the record proves that, so far as this country is concerned, the plaintiff is non-existent as a sovereignty. Originally one " Ludwig C. A. K. Martens, Representative for the United States by Rose Weiss, as attorney in fact " was one of the plaintiffs in this action. He was named as such in the summons and complaint herein, and was only eliminated as a party plaintiff by one of the provisions of the order appealed from. The record sets forth part of the report of the United States Senate committee on foreign relations, dated April 14, 1920, on the subject of Russian propaganda, including the following conclusions of the committee: " In sum, the Committee finds in obedience to the instructions of the resolution of the Senate that

" (1) Martens has no status whatever in this country in any diplomatic or other governmental representative quality.

" (2) Martens assumes to represent the Russian Federated Soviet Republic, a regime established in Russia by revolution,

and functioning under a Constitution which has been above summarized; a regime which has never been recognized by the Government of the United States, and which in international law has no standing as a constituted authority.

" (3) Martens has received no recognition officially, or even personally, by the Government of the United States."

Martens has since been deported from this country.

On May 6, 1921, our State Department issued the following public statement: " The Department of State has received numerous inquiries regarding Mr. L. A. Martens, claiming to be a representative of a Russian Socialist Federated Soviet Republic. The Department feels it should be its duty to inform the public that Mr. Martens has not been received or recognized as the representative of the Government of Russia, or of any other government. As the United States Government has not recognized the Bolshevik regime at Moscow as a government, extreme caution should be exercised as to representations made by anyone purporting to represent the Bolshevik Government."

There is also in evidence the following official letter from the Secretary of State:

" DEPARTMENT OF STATE

" WASHINGTON

" In reply refer to
" So — 861.01 /321
" Mr. THOMAS W. MILLER,
          " Alien Property Custodian,
                    " Washington, D. C.:

" SIR.— I have received your letter of August 24, 1921, in which you state that the ' Russian Socialistic Federated Soviet Republic ' has instituted suit against Gerhard & Hey, Incorporated, one of the corporations administered by the Alien Property Custodian under provisions of the Trading with the Enemy Act, and in which you request to be informed whether this plaintiff has been recognized by the Government of the United States.

" In reply, I may inform you that the Government of the United States has not recognized the ' Russian Socialistic Federated Soviet Republic.'

" I am, Sir,          Your obedient servant,
                    " CHARLES E. HUGHES."

All these facts appearing without contradiction, it follows that plaintiff, never having been recognized as a sovereignty by the executive or legislative branches of the United States government, has no capacity to sue in the courts of this State.

The conclusion thus reached finds additional support in the determination of the United States District Court for the Eastern District of New York in the action brought by the Russian Socialist Federated Soviet Republic and Ludwig C. A. K. Martens, as agent and representative thereof, by Rose Weiss, attorney in fact (the original plaintiffs herein) against The Steamers Penza and Tobolsk et al. (decided September 26, 1921) wherein Judge Manton, after a most careful analysis of the authorities, reached the conclusion that " The Soviet Republic never having been recognized as a sovereign State by this government, it may not maintain this libel in the Federal courts. Its alleged agent would have no better or greater rights than his principal. Therefore, this exception to the libel must be approved. Since it results in the dismissal of the libel, there is no necessity for considering the other exceptions which were filed."

The same conclusion was reached by Judge Dietrich in the United States District Court for the Northern District of California on May 25, 1921, in *Russia* v. *S. S. Rogdia*.

In view of the determination that there is no plaintiff before the court having capacity to sue, it is unnecessary to discuss the other reasons advanced by appellants for the reversal of the order.

The order appealed from is, therefore, reversed, with ten dollars costs and disbursements, and the motion for the appointment of a receiver and for other relief is denied, with ten dollars costs.

Clarke, P. J., Smith, Page and Greenbaum, JJ., concur.

Order reversed, with ten dollars costs and disbursements, and motion denied, with ten dollars costs.