UNITED STATES ex rel. D'ESQUIVA v. UHL, District Director of Immigration.

No. 263.

Circuit Court of Appeals, Second Circuit.

Aug. 18, 1943.

Arthur Garfield Hays, of New York City (Hays, St. John, Abramson & Schulman and James R. Cherry, all of New York City, on the brief), for petitioner-appellant.

Samuel Brodsky, Asst. U. S. Atty., of New York City (Mathias F. Correa, U. S. Atty., and Stuart Z. Krinsly, Asst. U. S. Atty., both of New York City, and Edward J. Ennis, Director, Alien Enemy Control Unit, Dept. of Justice, and Leo Gitlin, Atty., Dept. of Justice, both of Washington, D. C., on the brief), for respondent-appellee.

Before SWAN, CLARK, and FRANK, Circuit Judges.

CLARK, Circuit Judge.

By habeas corpus the relator sought release from detention by the respondent, who holds him in custody as an alien enemy under an order of the Attorney General purporting to act pursuant to the Alien Enemy Act, 50 U.S.C.A. § 21, and the presidential proclamation of December 8, 1941, No. 2526, 6 Fed. Reg. 6323. Appellant is a Jew born in Vienna, Austria, in 1891. His parents were native citizens of the Austro-Hungarian Empire. His petition alleges that in 1919 he went to France, intending never to return to Austria; and he never did return except to collect his inheritance from the estates of his parents in 1924. His domicile ·in France continued from 1919 to February, 1939, when he and his wife, a native French citizen whom he had married in Paris in 1938, came to the United States under tourist visas issued by the American Consulate General at Paris. In October, 1940, he executed an alien registration blank stating that he was last a citizen or subject of Austria. Respondent justifies detention of appellant on the ground that by reason of Austria's incorporation into the German Reich in 1938, as recognized by our government, he became a "native" and a "citizen" of Germany within the meaning of the statute.

Our decision in United States ex rel. Schwarzkopf v. Uhl, 2 Cir., 136 F.2d 898, disposes adversely to respondent of the contention that D'Esquiva is a German citizen. Long prior to the invasion of Austria he had taken up his abode in France and he has never elected to accept

the sovereignty of the invader. Therefore, he never became a citizen of Germany. Moreover, if by German law he did become a German citizen, such citizenship was terminated by the Executive Order of November 25, 1941.

■ The government argues that he is at least a "native" of Germany within the meaning of that word as used in the statute.[1] The use by Congress of the four words "natives, citizens, denizens, or subjects" indicates that each word is to have a significant and different meaning. They include all who by reason of ties of nativity or allegiance are likely to favor the enemy nation. "Natives" must include others besides citizens or subjects of the hostile nation or government. In its ordinary and natural meaning the word refers to a person's place of birth. Hence a person remains a native of the country of his birth, although he has moved away and become a citizen or subject of another nation or government. See Minotto v. Bradley, D.C. N.D.Ill., 252 F. 600, 602, 603; cf. Ex parte Gilroy, D.C.S.D.N.Y., 257 F. 110, 127. This is inferable from the statute itself, which applies to "all natives, citizens, denizens, or subjects of the hostile nation or government, * * * who shall be within the United States and not actually naturalized." The exception of those who have been naturalized is necessary only because of the term "natives"; the other classes named would cease to be "citizens, denizens, or subjects" of a hostile nation by the very fact of naturalization in the United States. Appellant, therefore, was a native of Austria, and we think he remained such despite his removal to France for permanent residence.

■ The next step is to determine the application of the statute to a native of Austria after that country ceased to exist as an independent nation. Against respondent's claim that he is a native of what is now recognized as Germany, appellant argues that a native is a person born not only within the territory, but also "within the allegiance of the government," in question, citing 2 Kent's Commentaries 39 and 1 Blackstone's Commentaries 369. But these authors were using the term in a context where they were distinguishing aliens from natives, i.e., native-born citizens; and they had no occasion to face the distinction made necessary in this statute between natives and citizens, denizens, or subjects. What we have said above makes clear that, unless we would deprive the word of all meaning in the statute, the additional requisite for a native for which appellant contends cannot be supported. And we think that, unless bizarre results are to be accepted, the term "native of a hostile nation" must include one born of native-citizen parents at a place which has now been recognized by our government as a component part of a nation with which we are at war. Thus, a native of Prussia before the German Empire was proclaimed in 1871 would now be a native of Germany. And an Alsatian should not be held subject to detention as an alien enemy merely because (unlike other members of his family, for example) he happened to have been born after the original cession of Alsace to Germany and prior to its return to France in 1919. Cf. In re Pfleiger, D.C. S.D.N.Y., 254 F. 511.[2] Nor should changes in the composition of the nation—the adding or subtracting of parts, as with France

---

[1] The first sentence of the statute, 50 U.S.C.A. § 21, derived from Act July 6, 1798, 1 Stat. 577, is as follows: "Whenever there is a declared war between the United States and any foreign nation or government, or any invasion or predatory incursion is perpetrated, attempted, or threatened against the territory of the United States by any foreign nation or government, and the President makes public proclamation of the event, all natives, citizens, denizens, or subjects of the hostile nation or government, being of the age of fourteen years and upward, who shall be within the United States and not actually naturalized, shall be liable to be apprehended, restrained, secured, and removed as alien enemies." Later provisions of this section and of § 22 set forth the nature of regulations

to be proclaimed by the President to carry the act into effect, including the manner and degree of restraint to which the alien shall be subjected, with reasonable time allowed those not chargeable with actual hostility to settle their affairs and depart.

[2] This was a case where an Alsatian, who was born before the cession of Alsace to Germany, but did not depart when that event took place, was held subject to the provisions of the statute of 1802, originally denying citizenship, now allowing it only under certain conditions, to an alien who "shall be a native, citizen, denizen or subject" of any country with which the United States is at war. 2 Stat. 153, now appearing as 8 U.S.C.A. § 726. See, also, In re Jonasson, D.C.Md., 241 F. 723.

and Germany in 1919, or the substitution of a federated republic for the empire, Germany, 1919—make a discontinuity so that a native of the former nation is to be considered not now a native of the succeeding and present nation. The question is like that arising on deportation of aliens, where "country" means the state, which at the time of deportation includes the place from which the alien came, Mensevich v. Tod, 264 U.S. 134, 44 S.Ct. 282, 68 L.Ed. 591, or of his nativity, if he has not acquired a domicile elsewhere. United States ex rel. DiPaola v. Reimer, 2 Cir., 102 F.2d 40.

Hence, if Austria is now recognized as a component part of Germany, we think appellant is to be considered a German native and properly detained as such. Recognition of foreign nations, it is settled, is a political question, the determination of which by the legislative and executive departments of the government conclusively binds the courts. Jones v. United States, 137 U.S. 202, 212, 11 S.Ct. 80, 34 L.Ed. 691; United States v. Pink, 315 U.S. 203, 229, 62 S.Ct. 552, 86 L.Ed. 796. The district court, therefore, properly considered the acts of the Department of State taken with reference to the Austrian Anschluss of 1938.

In its able opinion, the court refers particularly to the photostatic copy of a letter of May 9, 1942, from the Secretary of State to the Attorney General in response to the latter's inquiry as to what diplomatic recognition was given by the United States Government to the incorporation of Austria into the German Reich. The Secretary referred the Attorney General to two notes which had been delivered to the German Foreign Minister on April 6, 1938, by the American Ambassador to Berlin pursuant to instructions from the Department of State. In substance these notes stated that the Government of the United States was obliged to close its legation in Vienna and to establish in place thereof a Consulate General because the Minister of the Republic of Austria had informed the Department of State on March 17, 1938, that Austria had ceased to exist as an independent nation and had been incorporated into the German Reich, and further that the Government of the United States was under the necessity for all practical purposes of accepting the announcement of the Austrian Minister and that thereafter this government would look to the German Government for the payment of the Austri-

an debts. The district court thereupon said:

"The action taken by the Department of State, as reflected in the letter to the Attorney General and the two notes delivered to the German Foreign Minister, is some evidence tending to show that the United States Government recognized the consolidation of Austria with Germany. Such action took place only after the Austrian Government had formally notified the Department of State that that country had ceased to exist as an independent nation. Further evidence of such recognition is this action taken by the President, on April 28, 1942, when he abolished the Austrian quota allowed under the Immigration Act of 1924 (43 Stat. 153) and at the same time increased the German quota by the number formerly allowed Austria. (Proclamation No. 2283, 52 Stat. 1544.) In the absence of any proof to the contrary it must be assumed, therefore, that this government has officially recognized the consolidation of Austria with Germany."

This conclusion, therefore, led to its judgment of dismissal of the writ. It should be said that on a somewhat different issue we had earlier reached a similar conclusion as to the action of the State Department, in Land Oberoesterreich v. Gude, 2 Cir., 109 F.2d 635, 637, certiorari denied 311 U.S. 670, 61 S.Ct. 30, 85 L.Ed. 431.

Appellant, however, relies on other representations from the State Department, referred to in United States ex rel. Schwarzkopf v. Uhl, supra, which now constitute "proof to the contrary." In particular a press release of the Secretary of State, No. 386, July 27, 1942, after the decision below had been rendered, is quoted and relied on. Here, after referring to the confusion with respect to the view of this country "as to the present status of Austria" and speaking of "the situation presented by the imposition of military control over Austria, and residents of Austria, by Germany," the Secretary says: "This Government very clearly made known its opinions as to the manner in which the seizure of Austria took place and the relation of that seizure to this Government's well-known policy toward the taking of territory by force. This Government has never taken the position that Austria was legally absorbed into the German Reich." Since courts are bound by the action of the Executive, and where necessary address their own inquiries to it, it is held

that further clarification made by the Executive, even after the decision below has been made, is to be considered by the appellate court. Oetjen v. Central Leather Co., 246 U.S. 297, 301, 38 S.Ct. 309, 62 L.Ed. 726; Russian Socialist Federated Soviet Republic v. Cibrario, 198 App.Div. 869, 872, 191 N.Y.S. 543, 547; cf. Puente v. Spanish National State, 2 Cir., 116 F.2d 43, 45, certiorari denied 314 U.S. 627, 62 S.Ct. 57, 86 L.Ed. 504; Sullivan v. State of Sao Paulo, 2 Cir., 122 F.2d 355.

■ But even if we give all proper weight to this statement, we cannot find in it anything absolutely decisive. The word "legally" can hardly be given the same content with reference to intercourse between nations as it has in domestic law. Whether this statement was intended as a definite nonrecognition of the inclusion of Austria in Germany, thus making the situation of Austria comparable to that of Czechoslovakia (the country of which Schwarzkopf, in the companion case, was a native), or of other governments in exile, or whether it was merely a condemnation of the means by which the result was accomplished, is not clear.

There appear to be other governmental regulations tending to throw some further doubt on the matter. Thus, the Immigration and Naturalization Service of the Department of Justice has issued new instructions dated May 14, 1943, and June 8, 1943, pertaining to the proper classification for naturalization purposes of aliens of Austrian nativity and nationality and holding that they are not now to be considered natives of Germany for the purposes covered by the instructions. And recent instructions of the Treasury Department dealing with reports to be made of property owned in foreign countries are cited to us as distinguishing between Austria and Germany. How far these various regulations and instructions have been made in the light of, and in conformity with, the present view of the Department of State is not disclosed. At any rate, we think the ends of justice require a further inquiry into the recognition accorded the Austrian absorption into Germany by our Department of State. We might address our own inquiries to the Department, but we think the better course is to remand the proceedings to the district court, since a hearing and the taking of testimony on this issue may prove desirable.

The judgment is, therefore, reversed and the case remanded for further proceedings consistent with this opinion.

SWAN, Circuit Judge (dissenting).

In my opinion one who was born a native of Austria remains a native Austrian even though his country loses its identity as an independent state; hence, if the conqueror (Germany) becomes a "hostile nation or government" I do not think the native-born Austrians thereby become "natives" of a hostile nation within the meaning of the enemy alien statute. The purpose of that statute was to safeguard the security of the United States by apprehending and detaining all aliens who would be likely to entertain friendly feelings for the hostile nation, if in the individual case the President thought detention necessary. Native-born members of the hostile nation were likely to entertain such feelings and were therefore included in the definition of enemy aliens unless they had become naturalized citizens of the United States. But a native of the conquered country who has removed himself before the conquest has no reason whatever to favor the conqueror; on the contrary he has every reason for antipathy. In my view he cannot be considered a "native" of the hostile nation within the meaning of the statute. Consequently inquiry as to whether the United States through its Department of State has accorded de facto recognition of the absorption of Austria into Germany seems to be an irrelevant issue. I think the cause should be remanded with directions to sustain the writ and discharge the relator from custody.