UNITED STATES ex rel. UMECKER v. McCOY, Officer in Charge of Naturalization and Immigration Service, Fort Lincoln, Burleigh County, N. D.

Civ. No. 416.

District Court, D. North Dakota, S. W. D.

March 29, 1944.

Quentin N. Burdick, of Fargo, N. D., for relator George Umecker.

Harry Lashkowitz, Asst. U. S. Atty., of Fargo, N. D., for respondent.

VOGEL, District Judge.

This is a habeas corpus proceeding instituted by George Umecker against I. P. McCoy, Officer in Charge of the Naturalization and Immigration Service of the United States at Fort Lincoln, Burleigh County, North Dakota. The respondent holds Umecker in custody as an alien enemy by virtue of an order of the United States Attorney General. The order of the Attorney General, which is dated January 31, 1942, recites that the petitioner, George Umecker, is

"* * * a citizen of Germany, over the age of fourteen years, is within the United States and not a naturalized citizen thereof and has heretofore been apprehended as being potentially dangerous to the public peace and safety of the United States, and;

"Whereas, the Alien Enemy Hearing Board has recommended that said alien enemy be interned; Now, Therefore, upon consideration of the evidence before me,

"It Is Ordered that said alien enemy be interned."

At the hearing on the petition the Assistant United States District Attorney, who represented the respondent, stated to this court that the only question involved was whether or not the petitioner was a "native" of a country with which we are now at war. The respondent, accordingly, does not seek detention of the petitioner on the basis of any alleged German citizenship, but solely upon the basis that he is a "native" of Germany. The matter was tried on that basis, and with that being the only question involved.

The Alien Enemy Act, 50 U.S.C.A. § 21, by virtue of which the respondent seeks continued detention of the petitioner, provides that:

"* * * all natives, citizens, denizens or subjects of the hostile nation or government, being of the age of fourteen years and upward, who shall be within the United States and not actually naturalized, shall be liable to be apprehended, restrained, secured, and removed as alien enemies."

The undisputed facts necessary to a determination of whether or not the petitioner is a native within the purview of the statute involved are as follows: George Umecker, the petitioner herein, was born in 1893 in Wickersheim, Bas-Rhin, Alsace, which shall hereafter be referred to as Alsace, and which was at the time of petitioner's birth a part of Germany. He was born of French ancestry. His father was born in 1860 and his mother in 1861 in Alsace. At the time of their, the parents', birth, Alsace was a part of France. Subsequent to their birth, and in 1871, Alsace was ceded to Germany. It remained a part of Germany until the Treaty of Versailles, which restored it to French sovereignty as of November 11, 1918, subsequent to which time it has been continuously regarded by our State Department as a part of France. In 1914, while Alsace was regarded as a part of Germany, the petitioner was drafted into the German army, wherein he served until the spring of 1918, at which time he was discharged because of illness. In 1919 the petitioner emigrated from Alsace to Uruguay, South America. He left Alsace under a French Government passport as a French citizen. He arrived in New York on July 2, 1920, and has remained continuously within the United States subsequent to that time. Shortly after his arrival in the United States, and while in Washington, D. C., he took out his first citizenship papers, declaring his intention of becoming a citizen of the United States. In October of 1920 he enlisted in the United States army and and served therein until honorably discharged in 1922. He did not complete his application for naturalization, explaining that he thought his service in the United States Army automatically made him a citizen. He engaged in business in this country and remained here continuously until his arrest. He did not register as an alien in accordance with the provisions with reference to alien registration because, as he explained, he believed he was a citizen.

He has been interned as an alien enemy since January 31, 1942.

█ It is conceded by counsel for both parties, and I believe there is no question as to the correctness of the conceded position, that this court in the present proceeding has no right to determine whether or not the petitioner is a dangerous person to be at large during a time of war. Insofar as this petition for writ of habeas corpus is concerned this court must find that the petitioner is either a native, citizen, denizen or subject of a hostile nation or government within the meaning of the Alien Enemy Act, 50 U.S.C.A. § 21, or the court must order the petitioner released. See: United States ex rel. Schwarzkopf v. Uhl, District Director of Immigration, 2 Cir., 137 F.2d 898, 900, 903.

As the respondent seeks retention of the petitioner solely upon the alleged ground that he is a "native" of Germany, the issues have been considerably narrowed, it apparently being conceded that by virtue of the Treaty of Versailles and the return of Alsace to France the petitioner became a citizen of France, and that he is no longer a citizen, denizen or subject of Germany. The petitioner was born in 1893 in Alsace, at a time when Alsace was a part of Germany, so that there is no question but what at the time of his birth he would have been considered a native of Germany. The question with which we are now concerned is whether or not the return of Alsace to France by virtue of the Versailles Treaty, and our State Department's present recognition of Alsace as being a part of France, makes the petitioner a native of France within the meaning of the Alien Enemy Statute and destroys his former status as a native of Germany.

Subsequent to the hearing the parties were given time to obtain an expression from the Department of State with reference to our govrnment's present recognition of the political status of the territory known as Alsace and for the filing of briefs in support of their respective positions. The last brief herein was filed by counsel for the petitioner on March 21, 1944.

██ Neither counsel has been able to cite to the court any decision directly in point, with the exception of one; United States ex rel. D'Esquiva v. Uhl, District Director of Immigration, 2 Cir., 137 F.2d 903. It seems to me that that case is very much in point. The petitioner therein was

born in Vienna, Austria, in 1891 of native citizens of the Austro-Hungarian Empire. He left Austria in 1919 for France and did not return, excepting only to collect an inheritance. In 1939 he came to the United States. The Attorney General attempted to justify his detention on the ground that by reason of Austrian incorporation into the German Reich in 1938, as recognized by our government, he became a native and a citizen of Germany within the meaning of the statute. The Second Circuit Court disposed adversely to the Government of its contention that D'Esquiva was a German citizen on the basis of the same court's decision in United States ex rel. Schwarzkopf v. Uhl, 2 Cir., 137 F.2d 898, so that there remained in the case only the question of whether or not D'Esquiva was a "native" of Germany by reason of Austria's incorporation into the German Reich in 1938. It seems to me, therefore, that the Attorney General's position in the D'Esquiva case is directly contrary to that taken by him in the instant case. In the D'Esquiva case he sought to hold D'Esquiva as a native of Germany although he had been born in Austria. He attempted to justify that by showing that Austria, subsequent to D'Esquiva's birth, had become a part of Germany and, therefore, D'Esquiva was a native of Germany. In the instant case he seeks to hold Umecker because, at the time of his birth, Alsace, the place thereof, was a part of Germany, although our Government now recognizes it as being a part of France. The two positions are directly opposite and contradictory. The opinion of Judge Clark in the D'Esquiva case seems to me directly in point with the question with which we are here concerned, and I quote therefrom as follows (137 F.2d 903–905):

"The next step is to determine the application of the statute to a native of Austria after that country ceased to exist as an independent nation. Against respondent's claim that he is a native of what is now recognized as Germany, appellant argues that a native is a person born not only within the territory, but also 'within the allegiance of the government,' in question, citing 2 Kent's Commentaries 39 and 1 Blackstone's Commentaries 369. But these authors were using the term in a context where they were distinguishing aliens from natives, i. e., native-born citizens; and they had no occasion to face the distinction made necessary in this statute between natives and citizens, denizens, or subjects. What we have said above makes clear that, unless we would deprive the word of all meaning in the statute, the additional requisite for a native for which appellant contends cannot be supported. And we think that, unless bizarre results are to be accepted, the term 'native of a hostile nation' must include one *born* of native-citizen parents *at a place which has now been recognized by our government as a component part of a nation with which we are at war.* Thus, a native of Prussia before the German Empire was proclaimed in 1871 would now be a native of Germany. *And an Alsatian should not be held subject to detention as an alien enemy merely because (unlike other members of his family, for example) he happened to have been born after the original cession of Alsace to Germany and prior to its return to France in 1919.* Cf. In re Pfleiger, D.C. S.D. N.Y., 254 F. 511. Nor should changes in the composition of the nation—the adding or subtracting of parts, as with France and Germany in 1919, or the substitution of a federated republic for the empire, Germany, 1919—make a discontinuity so that a native of the former nation is to be considered not now a native of the succeeding and present nation. The question is like that arising on deportation of aliens, where 'country' means the state, which at the time of deportation includes the place from which the alien came. Mensevich v. Tod, 264 U.S. 134, 44 S.Ct. 282, 68 L.Ed. 591, or of his nativity, if he has not acquired a domicile elsewhere. United States ex rel. Di Paola v. Reimer, 2 Cir., 102 F.2d 40.

"*Hence, if Austria is now recognized as a component part of Germany, we think appellant is to be considered a German native and properly detained as such.* Recognition of foreign nations, it is settled, is a political question, the determination of, which by the legislative and executive departments of the government conclusively binds the courts." (Emphasis supplied.)

While clearly stating the principles and rules involved, the court in the D'Esquiva case remanded the question to the District Court for the purpose of making further inquiry into the recognition accorded the Austrian absorption into Germany by our State Department. The principles enunciated, however, are in nowise changed or detracted from by the remanding of the case for the purpose of determining what recognition our State Department had made

of the territorial absorption of Austria by Germany.

 Nativity is determined solely by the *place* of birth, not by allegiance, citizenship or duty. Being a native of a country never can become a matter of choice on the part of an individual, and it is unaffected by anything he himself can or would do. Therein lies its great distinction from the classification of citizen, denizen or subject. The latter by their own acts may change their status as such or their status may willy-nilly be changed for them. But a person is a native of the *place* of his birth and always remains a native of that place, regardless of anything he may do. If we *now* recognize that *place* as being a part of France we must, then, in order to give proper meaning to the word native, recognize him as being a native of France. Umecker, the petitioner herein, will always remain a native of the soil whereon he was born. Our Department of State at the present time, and by virtue of the Treaty of Versailles, recognizes that soil as being a part of France. I, accordingly, can come to no other conclusion than that the petitioner is a native of France, and that his release must be granted. It will be so ordered.