UNITED STATES ex rel. GREGOIRE v. WATKINS, District Director of Immigration and Naturalization.

No. 28, Docket 20669.

Circuit Court of Appeals, Second Circuit. Nov. 6, 1947.

John F. X. McGohey, U. S. Atty., of New York City (Harold J. Raby, Asst. U. S. Atty., of New York City, of counsel), for appellant.

Gunther Jacobson, of New York City, (John Windsor, of Jackson Heights, N. Y., of counsel), for appellee.

Before L. HAND, SWAN, and CHASE, Circuit Judges.

SWAN, Circuit Judge.

This appeal raises two questions: (1) whether the district court erred in granting the relator a hearing in view of previous habeas corpus proceedings, and (2) whether the relator is a "native" of Germany within the meaning of the Alien Enemy Act, 50 U.S.C.A. § 21. The relevant facts are not in dispute.

The relator is a descendant of an old French family which had resided in the Province of Lorraine for many generations. He was born at Metz in that province in 1894. By the Treaty of Versailles Lorraine was restored to France as of November 11, 1918 and the relator became a French citizen. On a French passport and an immigration visa issued under the French quota, he legally entered the United States in March 1941, and took up residence in California. In January 1942 he was there arrested and was ordered by the Attorney General to be interned as an alien enemy. He forthwith applied to the United States District Court for the Northern District of California for a writ of habeas corpus, but his application was denied by

Judge St. Sure, without opinion, and no writ issued. Three years later, in April 1945, he made a second application which the same judge again denied without issuance of a writ. Ex parte Gregoire, D.C., 61 F.Supp. 92. Thereafter the relator was taken to Ellis Island and was informed that an order had been issued by the Attorney General for his removal to Germany. Before this order was served upon him, he instituted a habeas corpus proceeding in the Southern District of New York. A writ was issued but after argument was denied on the ground that the circumstances, save for the order of removal, were the same as Judge St. Sure had considered and, with respect to the removal order, the writ was premature.[1] On May 17, 1946 the removal order was served upon the relator and he thereupon sued out the present writ which Judge Knox sustained.

■■ We cannot accept the appellant's contention that the earlier habeas corpus proceedings should have precluded Judge Knox from an independent consideration of the legality of the relator's detention at Ellis Island. Although this issue involved the same question of law decided by Judge St. Sure, the doctrine of res judicata does not extend to a decision on habeas corpus refusing to discharge a prisoner, Salinger v. Loisel, 265 U.S. 224, 44 S.Ct. 519, 68 L.Ed. 989. This does not mean that a prisoner may again and again call upon a court to repeat the same ruling; the court may, in the exercise of discretion, protect itself against a pertinacious relator. United States ex rel. McCann v. Thompson, 2 Cir., 144 F.2d 604, 606, 156 A.L.R. 240.

But there was no abuse of discretion by Judge Knox in granting a hearing on the present writ. He was only the second judge to pass upon the merits; Judge Mandelbaum did not consider them. Moreover, imminence of the relator's deportation to Germany, under the removal order just served upon him, brought a new fact into the case entitling the relator to a hearing, even though the new fact might prove irrelevant, if the court should determine, in agreement with Judge St. Sure, that the relator was a "native" of Germany.

■■ Upon the merits the question presented is the proper meaning to be ascribed to the statutory phrase "natives * * * of the hostile nation or government."[2] If we say that the words refer to the time of the alien's birth, we shall be able to intern and deport aliens born in a place which was then within the boundaries of a "nation or government" now hostile but has now come within the boundaries of a nation or government recognized to be friendly. On the other hand, we shall not be able to intern and deport those born in a place which has come within the boundaries of a nation or government now hostile, if it was then within the boundaries of a nation or government now friendly. Between these alternatives choice must be made, if any logically consistent construction of the statute is to be attained. On the whole it would seem more consonant with the policy of the statute to hold that the decisive fact is whether the alien's birthplace is within the boundaries of a hostile or a friendly nation at the time of his arrest for internment. This court ex-

[1] From this decision an appeal was taken, which was dismissed on consent after Judge Knox had sustained the present writ. United States ex rel. Gregoire v. Watkins, 2 Cir., 157 F.2d 433.

[2] 50 U.S.C.A. § 21: "Whenever there is a declared war between the United States and any foreign nation or government, or any invasion or predatory incursion is perpetrated, attempted, or threatened against the territory of the United States by any foreign nation or government, and the President makes public proclamation of the event, all natives, citizens, denizens, or subjects of the hostile nation or government, being of the age of fourteen years and upward, who shall be within the United States and not actually naturalized, shall be liable to be apprehended, restrained, secured, and removed as alien enemies. The President is authorized, in any such event, by his proclamation thereof, or other public act, to direct the conduct to be observed, on the part of the United States, toward the aliens who become so liable; the manner and degree of the restraint to which they shall be subject and in what cases, and upon what security their residence shall be permitted, and to provide for the removal of those who, not being permitted to reside within the United States, refuse or neglect to depart therefrom; and to establish any other regulations which are found necessary in the premises and for the public safety."

plicitly so held in United States ex rel. D'Esquiva v. Uhl, 137 F.2d 903. The views there expressed, if adhered to, control the present case.[3] D'Esquiva was born in Austria in 1891 of parents who were native citizens of the Austro-Hungarian Empire. We held that by reason of Austria's absorption into the German Reich in 1938 and the recognition thereof (if proved) by our Department of State, the relator became a "native" of Germany within the meaning of the Alien Enemy Act. In support of that conclusion, we said at page 905:

"Thus, a native of Prussia before the German Empire was proclaimed in 1871 would now be a native of Germany. And an Alsatian should not be held subject to detention as an alien enemy merely because (unlike other members of his family, for example) he happened to have been born after the original cession of Alsace to Germany and prior to its return to France in 1919."

This view was followed with respect to an Alsatian relator in United States ex rel. Umecker v. McCoy, D.C.N.D., 54 F. Supp. 679. We still adhere to it. Accordingly the order is affirmed.

---

[3] The writer of the present opinion dissented in the D'Esquiva case, but further reflection has caused me to doubt the validity of my dissent; and in any event I should accept the majority decision as the law for this court unless my present colleagues should wish to overrule it— which they do not.